Rochelle ARONOFF et al., Appellants,

v.

**TEXAS TURNPIKE AUTHORITY,**
Appellee.

No. 15208.

Court of Civil Appeals of Texas.

Dallas.

Jan. 11, 1957.

Rehearing Denied Feb. 15, 1957.

McKool & Bader, Dallas, for appellants.

Locke, Locke & Purnell, and Wayne O.. Woodruff, Dallas, for appellee.

DIXON, Chief Justice.

This appeal is from a judgment in a condemnation proceeding originally filed January 23, 1956 by appellee Texas Turnpike Authority involving the whole taking of a fee interest in two lots with improvements owned by appellants Rochelle Aronoff and Nathan Aronoff and a leasehold interest owned by Luke Cortemeglia and Marie Cortemeglia in a liquor store located on one of the lots.

On January 30, 1956 special commissioners filed their report awarding the appellants Aronoffs $40,081.62 and the appellants Cortemeglias $4,000 for their interests. All appellants filed objections to the commissioners' decision, but admitted appellee's right to condemn. Thus the only issues left to be determined were the values of the two interests being taken.

Appellants asked for a jury trial. The court was so informed. Sometime in January 1956 both parties through their attorneys appeared in court and asked for a setting. In response to their request the case was set for trial March 19, 1956. The record shows that it was understood and anticipated by all parties—that is, by appellants, appellee and the trial judge—that trial would be to a jury.

On March 19, 1956 all appellants and appellee appeared in court and announced ready for trial. It was a Monday morning. A jury was available or would be available as usual about 10:00 o'clock. At this juncture the trial court, upon examining the docket sheet, discovered that no jury fee had been paid. The court thereupon announced that the case would not be tried to a jury, but would be tried before the court alone. Appellants objected and hurriedly paid the jury fee. Nevertheless the court persisted in its refusal to grant a jury trial. Appellants filed a written motion asking for a jury trial, setting forth in considerable detail the circumstances surrounding the setting of the case as a jury case and the failure sooner to pay the jury fee. The

motion was overruled, the court stating that to grant a jury trial would seriously interfere with and impede the ordinary handling of the court's business. Appellants then asked leave to withdraw their announcement of ready. Their request was denied.

Meantime appellee had informed the court that though appellee had not asked for a jury trial and was willing to go to trial with or without a jury, it did anticipate that the case would be tried before a jury and had made preparations accordingly; and that if the court was unwilling to try the case before a jury on that day—March 19, 1956—appellee would agree to a continuance of the trial to some future date for a jury trial. After it became apparent that the court was determined to proceed with a non-jury trial, appellee further stated that it would try to avoid delay in getting its witnesses together, but if there should be such delay it would ask the court's forbearance.

The case went to trial without a jury. The court rendered judgment for the Aronoffs for $40,000 and for the Cortemeglias for $1,800. The Aronoffs had already drawn down the $40,081.62 which had been awarded to them by the commissioners and which had been deposited with the County Clerk. So the court's judgment ordered them to refund the sum of $81.62. The Cortemeglias, having withdrawn the $4,000 awarded to them by the commissioners, were ordered to refund the sum of $2,200. Both the Aronoffs and the Cortemeglias have perfected their appeals.

The appeals are briefed together. They present eleven points on appeal as follows: "(1) The trial court erred and abused his discretion in denying and overruling appellants' motion for a trial by jury. (2) The trial court erred and abused his discretion in denying and depriving defendants of a trial by jury and compelling the appellants to proceed to trial without a jury. (3) The trial court erred and abused his discretion in refusing to reset or con-

tinuing this cause to some later date instead of compelling appellants to proceed to trial without a jury. (4) The trial court erred and abused his discretion in refusing to allow appellants to withdraw their announcement of ready. (5) The trial judge was so biased and prejudiced against the attorney for the appellants and the appellants and was determined from the commencement of this case to deprive the appellants of a jury trial and to award appellants amounts less than the commissioners' awards (which the trial judge did do) that appellants did not receive a fair and impartial hearing, and, therefore, this judgment should be set aside. (6) The trial court erred during the hearing on the amended motion for a new trial in controlling the court reporter and in instructing the court reporter to record only the judge's comments and on other occasions to make no record at all. (7) The trial court erred in refusing to permit the attorneys for appellants from making any objections to the court's rulings and actions and in refusing to permit said attorneys from making any bills of exceptions. (8) The trial court erred in allowing E. L. Bale, a witness for appellee, to testify, over the objections of appellants, as to the sale price of the property at 500 S. Industrial, and being Lots 11 and 12 in Block 67/415, which was introduced as a comparable sale to the subject property. (9) The trial court erred in allowing E. L. Bale, a witness for appellee, to testify, over the objections of appellants, as to the sale price of Lots 5 and 6 in Block 67/415 which was introduced as a comparable sale to the subject property. (10) The trial court erred in permitting E. L. Bale, a witness for appellee, to testify, over the objections of appellants, as to the sale price of the property located at 1901–3–5 South Industrial which was introduced as a comparable sale to the subject property. (11) The trial court erred in granting judgment to Luke and Vince Marie Cortemeglia in the sum of $1,800 because said sum is wholly insufficient and against the overwhelming

weight of the testimony so as to be clearly wrong."

It will be noticed that appellants' first four points are based on the trial court's refusal to permit trial to a jury. We shall therefore discuss these four points together.

Article I, sec. 15 of the Constitution of Texas, Vernon's Ann.St. provides: "The right of trial by jury shall remain inviolate." Nevertheless trial by jury in Texas is not an absolute right in civil cases. It is subject to certain procedural rules. One of these rules is that a jury fee shall be paid ten days prior to trial. Rule 216, Vernon's Texas Rules of Civil Procedure.

It is an undisputed fact in this case that appellants did not comply with the above provision. They did not pay the jury fee until the day of trial, although a jury trial had been demanded and the case had previously been given a setting as a jury case.

It is recognized in our law and conceded by all parties here that Rule 216, V.T.R.C.P., is discretionary rather than mandatory; and that when the Rule has not been complied with, a trial court's decision to grant or deny a jury trial will not be reversed on appeal except on a showing of abuse of discretion. Under what circumstances will it be held that a trial court has abused such discretion? We believe the law on the question to be that a party may not be denied a jury trial though he may have been dilatory in paying the jury fee if (1) to grant a jury trial will not operate to injure the adverse party; and (2) to grant a jury trial will not disrupt the court's docket, or seriously interfere with and impede the ordinary handling of the court's business.

We think that under the record in the instant case it must be held that the granting of a jury trial would not have operated to injure the adverse party. It was not appellee who had demanded a jury.

The demand was made by appellants. But appellee, expecting a jury trial, had joined with appellants in requesting a setting of the case as a jury case and the court knowing that a jury had been requested, set the case for trial March 19, 1956. On that date all parties appeared in court ready for trial to a jury. Appellee, the adverse party, told the court that it was willing to proceed to trial before a jury notwithstanding appellants' belated payment of the jury fee, and even expressed a willingness to postpone the case in order to allow appellants a jury trial. Under such circumstances it cannot well be said that to grant a jury trial would have operated to injure the adverse party.

It remains then for us to consider whether the granting of a jury trial would have disrupted the court's docket or would have seriously interfered with and impeded the ordinary handling of the court's business. After a careful consideration of the whole record, we are convinced that the answer must be in the negative.

In overruling appellants' motion for a jury trial, the trial judge stated that "If the court were to grant a jury trial, it would seriously interfere with and impede the ordinary handling of the court's business." We do not doubt the sincerity of the trial judge, but we are convinced that his conclusion was based on an erroneous analysis of the undisputed facts. The undisputed facts are, as we have already stated, that several weeks prior to March 19, 1956 both attorneys had appeared in court and asked for a setting of the case, informing the court that it was a jury case. The judge had set the case for trial March 19, 1956, anticipating a jury trial. The court's docket of cases set for trial, including not only this case but other cases as well, was arranged accordingly. Apparently it was not discovered that the jury fee had not been paid until the morning of March 19, 1956 after both sides had announced ready for trial in what they thought was to be a jury case. Immediately thereafter appellants paid the jury fee. Under the circumstances it must be held that the ordinary handling of the court's docket would not have been interfered with or impeded if the court had proceeded with a jury trial as originally planned. Rather it is more accurate to say that the unexpected change in plans from a jury trial to a non-jury trial was a disrupting factor which under the circumstances tended to interfere with the orderly handling of the court's business as planned. This is shown among other things by the statement made by appellee's attorney when he realized that the court was determined not to allow a jury trial. Unexpectedly facing a new and shorter time schedule for the duration of the trial, he informed the court that he would try to assemble his witnesses in time for the prompt presentation of his evidence, but if delay occurred he asked for the forbearance of the court.

In an early case, Allen v. Plummer, 71 Tex. 546, 9 S.W. 672, at page 673, our Supreme Court said: "It has been, in effect, held by this court, that articles 3064, 3066, of the Revised Statutes, which directs that the demand for a jury [trial] shall be made and the jury fee paid upon the first day of the term, are not strictly mandatory, and that the failure to make the payment on that day does not forfeit the right to have a trial by jury when such failure does not operate to the prejudice of the opposite party. Allyn v. Willis, 65 Tex. 65; Gallagher v. Goldfrank, 63 Tex. 473; Hardin v. Blackshear, 60 Tex. 132; Berry v. [Texas & N. O.] Railroad Co., 60 Tex. 654. Applying this rule to the case before us, we think the court erred in not passing the case until the call of the jury docket, and in trying the case without a jury. It is true that the trial judge says, in explanation of his action, that the result of a compliance with plaintiff's demand would have been to deprive the defendants of a trial until the next term of court; from which we infer, as the jury docket had not been called, that,

in his opinion, the term of court and the state of that docket would not admit of the case being reached at the then existing term. Conceding that such was the fact, we fail to see that this condition of affairs is brought about by the plaintiff's delay in paying the jury fee. If the payment had been made on Monday, the result would have been precisely the same. By failing to deposit the fee on the first day, the plaintiff did not so far forfeit his right to a jury trial that the court had the discretion to refuse it merely because the defendant would thereby be delayed in getting a hearing, the danger of delay in the hearing not having been caused by the failure to make the deposit at the time specified in the statute."

In Tilton v. Sharp, 52 S.W.2d 289, 290, the Court of Civil Appeals said: "The right of trial by jury is a valuable one, and will not be denied a litigant, even though he has been dilatory in complying with the provisions of the statute (Rev.St. 1925, art. 2123 et seq.), unless the granting thereof will interfere with the orderly handling of the court's docket or in some way operate to the injury of the adverse party. Hemman v. Hemman, Tex.Civ. App., 251 S.W. 313; Petri v. Lincoln Nat. Bank, 84 Tex. 153, 19 S.W. 379. * * * While the court refused the request for a jury on the ground that the granting thereof would 'impede the progress of the court in trying and disposing of subsequent cases previously set for trial on the following day,' because the trial of the case would be lengthened by a jury trial, yet nowhere does it appear that the court did not have during the remainder of its term sufficient time within which to dispose of its docket. We think it is a matter of common knowledge that courts are frequently delayed in disposing of subsequent cases by previous cases consuming more time in the trial than was anticipated by the court when the settings were made. In view of the above facts, we have concluded that the court was not justified in refusing appellant's request for a jury." See also Petri

v. Lincoln Nat. Bank, 84 Tex. 153, 19 S. W. 379; Western Union Tel. Co. v. Everheart, 10 Tex.Civ.App. 468, 32 S.W. 90; Blair v. Paggi, Tex.Com.App., 238 S.W. 639; Creglar v. Hyde, Tex.Civ.App., 280 S.W.2d 783.

As we believe the court's refusal under the circumstances to grant appellants' request for a jury trial was reversible error, we sustain appellants' first four points on appeal.

Appellants' fifth, sixth and seventh points allege bias and prejudice on the part of the trial judge of such a nature as to deprive appellants of a fair trial. The record discloses that regrettable scenes took place during the trial and that regrettable things were said and done. The trial judge made statements explaining and defending his actions, which statements appear in the record. Appellants present their side of the controversy by means of bystanders' bills of exception. Since we have already concluded that the judgment of the trial court must be reversed because of the refusal to allow appellants a jury trial, we see no need to pass on the fifth, sixth and seventh points. To do so would serve no useful purpose, especially since the happenings complained of surely will not occur again on a retrial of the case.

In their eighth, ninth and tenth points appellants complain because the witness E. L. Bale was allowed to testify as to the sale of three comparable properties. Appellants say that the witness Bale was erroneously permitted to break down the total values separately into land values and the values of the improvements, and further that his opinion was based on hearsay.

Appellants' witnesses had testified as to the values of the subject land and the improvements separately in explanation of their opinion as to the total value of the property taken by condemnation. Thereafter appellee by way of rebuttal offered the witness Bale, who testified that the subject land was valued at $19,920, or

$1.40 per square foot, and the subject improvements at $13,925, making a total valuation of $33,845. In explaining how he arrived at his figure of $1.40 per square foot as the value of the subject land, Bale testified about the sales of three comparable pieces of property. He had not negotiated the three sales himself, so part—but only part—of his information about them was necessarily derived from other sources, including the owners of the property. To that extent part of the data on which he based his opinion may be said to be hearsay.

There is much evidence in the record relative to Bale's qualification as a witness on the question of real estate values. At the time of the trial he had been twenty-five years in the real estate business and fifteen years in the appraisal business. Among the professional organizations of which he was a member are the American Right-of-Way Association, National Association, American Society of Appraisers, Society of Residential Appraisers and the Dallas Real Estate Board. Last year he attended a special course in real estate condemnation at Southern Methodist University, and the year before that he attended a similar course in Houston, Texas. Generally he takes a seminar course in the subject somewhere every year.

He testified that he was acquainted with present values of property on or near South Industrial Boulevard in Dallas, in which area the subject property is located. He had conducted extensive appraisals in the area, and had examined recent sales in the area and in comparable areas. He was acquainted with and had personal knowledge of the subject property and the comparable properties.

■■ In our opinion the testimony objected to was admissible. We are aware that opinion testimony is not admissible when the opinion is based entirely on hearsay facts or data. (We are not concerned here with opinions given in answer to prop-

erly propounded hypothetical questions.) But that is not the situation before us. Though Bale's opinion was based partly on information gained from reading and listening, he himself had personal knowledge of the properties and their values, though he had not himself actually negotiated the sales of any of them.

In Houston Lighting & Power Co. v. Daily, Tex.Civ.App., 291 S.W. 317, at pages 321, 322, Judge Pleasants of the Galveston Court of Appeals said: "H. Blase, a witness for appellees, testified that he resided about 7 miles from Rosenburg and knew where appellees' land is across which appellant's power line was constructed, and had seen the line; that he had been in the farming business in that county since 1900 and was familiar with land values around Rosenberg and in his section, had heard of sales and purchases and offers, and thought he was prepared to give an opinion as to the value of the land; that during the 25 years he had lived there he had known of sales in and around that vicinity, had heard what prices were asked for land, had heard offers made, and, putting all of these facts together, he felt qualified to express an opinion as to the reasonable fair market value of land in appellee's neighborhood; that he knew the character of appellees' land and the uses to which it could be put. * * * Appellant's objection to the testimony of these witnesses goes to the weight and not the admissibility of their testimony." In Fort Worth & R. G. Ry. Co. v. Hickox, Tex.Civ.App., 103 S.W. 202, at page 203, it is said: "Another objection to the testimony of these witnesses is that their evidence as to market value is hearsay, is not predicated upon information that they independently possessed, but was based upon what was stated or told to them by others who claimed to have some knowledge of the market value of horses. * * * It might be true that the objection is well taken as to the evidence of the witness Couch * * * but as to the evidence of the witness Faulkenbury a different rule applies. He did seem to have some actual

knowledge as to market value, independent of information that he had received from other parties; and, if we were to eliminate the evidence of the witness Couch, the judgment of the court below could be sustained upon the estimate of value fixed by Faulkenbury. * * * there being no question as to the admissibility of Faulkenbury's evidence, the judgment as to value could properly rest upon the testimony of this witness." See also Cole v. City of Dallas, Tex.Civ.App., 229 S.W.2d 192, and McCormick and Ray, Texas Law of Evidence, sec. 638, pp. 808–809. We overrule appellants' eighth, ninth and tenth points.

Appellants' last point on appeal is that the judgment of $1,800 for the Cortemeglias' leasehold interest is insufficient and against the overwhelming weight of the evidence. As we have already decided that the judgment must be reversed on other grounds, there is no need for us to pass on this point.

Because we are of the opinion that the refusal to grant appellants a jury trial was reversible error, the judgment is reversed and remanded.

### On Rehearing.

In order for appellants to show that they were entitled to a jury trial notwithstanding their failure to pay the jury fee on time, it was necessary for them to negative *both* the conditions which might defeat their request. In other words, appellants had the burden of establishing that to allow them a jury trial (1) would not operate to injure the adverse party, *and* (2) would not disrupt the court's docket. On the other hand, to defeat appellants' demand for a jury trial under the circumstances, appellee needed only to establish one—either one—of the conditions. That is to say, appellee had only to show that to allow appellants a jury trial would operate to injure appellee *or*

would disrupt the court's docket. The record here shows that both conditions were negatived. Therefore appellants were entitled to a jury trial.

As we stated in our opinion appellants, not appellee, asked for a jury. However appellee objects to our statement that both attorneys appeared in court and asked for a setting of the case, informing the court that it was a jury case. Our statement was based on a part of the record as follows:

From appellants' motion for a jury trial: "That in January of 1956, the plaintiff and the defendants, by their attorneys, appeared before this Court for a setting of this case as close to a number one setting as possible in order that the case could be tried. At the time that they appeared before the Court, they also requested a setting in another case which was set at the same time this case was set. *At that time, both attorneys informed the Court that these cases were to be tried by juries,* and it would take about a day and a half to try the cases, and that they wanted these cases to be set on a Monday so that they would be able to get all their witnesses, and get to trial without any question. * * * That both attorneys for both sides have anticipated and made clients available at a particular time for this hearing, based upon the fact that it was to be tried before a jury, and that having to proceed for trial before the Court makes it impossible to secure the witnesses * * *." (Emphasis ours.)

From statement of appellee's counsel: "As to the dates set forth in the motion of the defendants, the dates and facts related therein by attorney for defendant are substantially true and correct to the best of my knowledge and belief."

Appellee's motion for rehearing is overruled.