In re NORTH AMERICAN
REFRACTORIES
COMPANY.

No. 09–01–270–CV.

Court of Appeals of Texas,
Beaumont.

Submitted July 16, 2001.

Decided Aug. 30, 2001.

D. Ferguson McNiel, Vinson & Elkins, L.L.P., Houston, for relator.

Glen W. Morgan, Richard J. Clarkson, Reaud, Morgan & Quinn, Inc., Beaumont, for real parties in interest.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

GAULTNEY, Justice.

North American Refractories Company ("NARCO") seeks a writ of mandamus to compel the Honorable Patrick A. Clark, judge of the 128th District Court of Orange County, Texas, to grant a continuance of a trial originally scheduled to commence on June 25, 2001. The underlying asbestos products liability suit involves over 4000 plaintiffs. This particular trial affects ten plaintiffs[1] designated as the trial group by plaintiffs' counsel on June 11, two weeks before trial was to begin. NARCO filed its motion for continuance on June 19, on the grounds that lead counsel had a timely vacation letter on file for the week of June 25 and on the grounds that discovery was incomplete. The trial court denied the motion on June 22.

■ The relator now suggests the petition may be moot because the week of June 25 passed while our stay order was in effect and before we ruled on the issue before us. Nevertheless, the act complained of in the petition is arguably "capable of repetition yet evading review." *See General Land Office of the State of Texas v. OXY U.S.A., Inc.,* 789 S.W.2d 569, 571 (Tex.1990). More importantly, the real parties in interest have requested sanctions be imposed upon NARCO for filing a groundless petition for purposes of delay. *See* TEX.R.APP. P. 52.11. We must determine whether the petition has merit even though the original June 25 trial setting has passed.

■ Although mandamus is generally not available to review the denial of a motion for continuance, *General Motors Corp. v. Gayle,* 951 S.W.2d 469, 477 (Tex. 1997), mandamus will issue to enforce the trial court's ministerial duty to grant a mandatory continuance. *Amoco Prod. Co. v. Salyer,* 814 S.W.2d 211, 212–13 (Tex. App.—Corpus Christi 1991, orig. proceeding). Appellate courts have ordered trial judges to honor legislative continuances, for example. *Collier v. Poe,* 732 S.W.2d 332, 346 (Tex.Crim.App.1987); *In re Starr Produce Co.,* 988 S.W.2d 808, 811–812 (Tex.App.—San Antonio 1999, orig. proceeding); *Salyer,* 814 S.W.2d at 213.

■ Legislative continuances are subject to mandamus because a statute makes

---

1. The real parties in interest have been identified as Jim Amison, Jr., Tony Houston Belle, Sr., Richard Deed, George Dudley, Dock Shaheen Farris, Johnnie Hughes, Joe Daniel Miles, Gene Tunney Saulters, Melvin Curtis Story, and Mardis Bryan Wallis, Jr.

them mandatory. *Mora v. Ferguson,* 145 Tex. 498, 199 S.W.2d 759, 762–63 (1947); *see* TEX. CIV. PRAC. & REM.CODE ANN. § 30.003 (Vernon 1997). We must decide whether a similarly mandatory law applies in this case. Normally, absence of counsel is not good cause for a continuance, but a continuance may be granted in the discretion of the judge. TEX.R. CIV. P. 253. In this case, however, relator relies on a local mandatory rule approved by the Texas Supreme Court. Trial courts are governed by local rules approved by the Texas Supreme Court. TEX.R. CIV. P. 3a. The real parties in interest do not challenge the local rule. Rule 11 of the Regional Rules of Administration for the Second Administrative Judicial Region of Texas provides:

Rule 11: Attorney Vacations

a. DESIGNATION OF VACATION. Subject to the provision of subparts b and c of this rule, an attorney may designate not more than four weeks of vacation during a calendar year as vacation, during which that attorney will not be assigned to trial or required to engage in any pretrial proceedings. This rule operates only where lead counsel, as defined by T.R.C.P. 8, is affected, unless the trial court expands coverage to other counsel.

b. SUMMER VACATIONS. Written designation for vacation weeks during June, July, or August must be filed with the district clerk by May 15. Summer vacation weeks so designated **will protect** the attorney from trials during those summer weeks, **even if an order setting the case for trial was signed before the vacation designation was filed.**

c. NON–SUMMER VACATIONS. Written designations for vacation in months other than June, July, or August must be filed with the district clerk by February 1. Non-summer vacation weeks may not run consecutively for more than two weeks at a time. Non-summer vacation weeks so designated will not protect an attorney from a trial by an order signed before the date the designation is filed. (emphasis added).

■ The Supreme Court approved the adoption of this rule pursuant to its rule-making authority. *See* Misc. Docket No. 96–0006 (Tex. January 3, 1996); *see* TEX. CONST. art. V, § 31; TEX. GOV'T CODE ANN. §§ 74.021; 74.046(1), 74.048(c) (Vernon 1998); TEX.R. CIV. P. 3a. Under proper circumstances, a trial court's violation of a local mandatory rule may be corrected through mandamus. *See Dancy v. Daggett,* 815 S.W.2d 548, 549 (Tex.1991). In this case, the rule expressly provides that a vacation letter filed by May 15 will protect the lead attorney from trial during the designated weeks, even if the order setting the case for trial was signed before the letter was filed. The rule is mandatory and precludes the exercise of discretion that would otherwise reside with the court.

The real parties in interest cite *Siegler v. Williams,* 658 S.W.2d 236, 239 (Tex. App.—Houston [1st Dist.] 1983, no writ), in support of their argument that NARCO failed to exercise diligence in obtaining a continuance. In *Siegler v. Williams,* the court found the right to a continuance was waived by co-counsel's agreement to a preferential setting **after** a vacation letter was filed. *Id.* NARCO's counsel, on the other hand, did not act in a manner inconsistent with his reliance on his timely filed vacation letter. Furthermore, in *Siegler,* after agreeing to the preferential setting, the party did not appear for trial and did not file a motion for continuance based on the vacation letter. *Id.* at 238. Here, relator did file a proper motion for continuance based in part on the vacation letter and the mandatory language of Rule 11.

Once the motion was filed invoking the rule, the trial court had no discretion to ignore the mandatory language in the rule.

The real parties in interest do not contend that denial of the June 25 trial setting deprived them of due process. *See Waites v. Sondock,* 561 S.W.2d 772, 776 (Tex. 1977). Absent a due process exception, the trial court had a ministerial duty to grant the continuance in compliance with the local rules of procedure.

The real parties in interest also rely on *Cezeaux v. Libby,* 539 S.W.2d 187, 190 (Tex.Civ.App.—Beaumont 1976, no writ), which held that the appellant failed to demonstrate either an abuse of discretion or harm from the denial of a motion for continuance based upon a vacation letter. *Cezeaux* pre-dates the adoption of Rule 11. After the adoption of the rule, with its clearly mandatory language, it cannot reasonably be stated that honoring a vacation letter remains a matter of court discretion. Also, the harm in the refusal to honor a vacation letter inures not to the litigant, but to his counsel, who must attend the trial or face professional censure. *Mora* recognized the public interest served by permitting members of the legal profession to serve in the legislature without surrendering their law practice to do so. *Mora,* 199 S.W.2d at 763. Likewise, a mandatory local rule requiring vacation letters be honored serves the public interest by allowing those who devote their lives to the practice of law to also devote some reserved time to their families. Because the trial court's arbitrary refusal to recognize counsel's vacation letter cannot be remedied on appeal, mandamus will be issued to prevent the violation of the rule.

■ Secondly, the relator contends, both in its motion for continuance and its petition for writ of mandamus, a continuance is necessary in order to conduct additional pre-trial discovery.[2] The underlying suit has been brought by over 4000 plaintiffs. In November 2000, three trial settings were identified for fifty plaintiffs. A group of fifty plaintiffs was severed from the rest in February 2001. Not until June 11, 2001, did plaintiffs' counsel inform NARCO of the names of the specific ten plaintiffs who would go to trial on June 25. NARCO's motion for continuance alleged that the group of plaintiffs was the first involving a particular employer, American Cast Iron Pipe Company, that NARCO was in the process of seeking subpoenas in Alabama to obtain purchasing records from that employer, that plaintiffs' counsel had not yet forwarded all of the experts' medical reports and pathology specimens, and that independent medical examinations were scheduled for June 11–12 and could not be completed due to the fault of plaintiffs. The real parties in interest do not contest these facts and we must accept them as true. *See Whitehead v. Julian,* 476 S.W.2d 844, 845 (Tex.1972).

■■ The real parties in interest argue in response that the trial court complied with the rule requiring forty-five days notice of a first setting for trial. *See* Tex.R. Civ. P. 245. We disagree. The suit commenced in 1992. A group of fifty plaintiffs apparently was severed from the rest of the suit in February 2001, but the parties whose claims NARCO must defend against in the trial in question were unilaterally selected by plaintiffs' counsel and notice of their identity provided to the defendant a

---

**2.** This is NARCO's first motion for continuance. Plaintiffs did not controvert NARCO's verified motion; "we must accept the statements in the motion as true." *Verkin v. Southwest Center One, Ltd.,* 784 S.W.2d 92, 94 (Tex.App.—Houston [1st Dist.] 1989, writ de-

nied). In *Verkin,* the court held that "[i]n ruling on a first motion for continuance, the trial court does not have the discretion to reject the uncontroverted facts established by defendant's sworn motion." *Id.*

scant fourteen days before trial. "A party's due process rights are violated when he does not receive adequate notice of a hearing or trial setting." *Brosseau v. Ranzau,* 28 S.W.3d 235, 239 (Tex.App.—Beaumont, no pet.). The notice must be "meaningful" to satisfy constitutional due process requirements. *See Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Cunningham v. Parkdale Bank,* 660 S.W.2d 810, 813 (Tex.1983). We hold that two weeks notice of the first trial setting is not meaningful notice under these circumstances; the notice does not satisfy due process requirements or the specific forty-five day requirement of Rule 245. NARCO did not need to submit evidence regarding notice in the hearing on its motion for continuance; the lack of sufficient notice is shown on the face of the record.[3] *See In re Marriage of Parker,* 20 S.W.3d 812, 816 (Tex.App.—Texarkana 2000, no pet.). *See also Henderson v. O'Neill,* 797 S.W.2d 905 (1990) (mandamus issued to enforce Rule 87 requiring forty-five days notice on motion to transfer). By denying the relator a continuance to complete the medical examinations and the product exposure discovery, the trial court effectively prevented the defendant from developing critical evidence that goes to the heart of this case. *See Thompson v. Davis,* 901 S.W.2d 939, 940 (Tex.1995). As in *Davis,* "remedy by appeal is inadequate because the missing discovery cannot be made part of the appellate record." *Id.* More importantly, the denial of reasonable notice of the trial setting and of the opportunity to complete discovery that goes to the heart of this case severely compromises the relator's ability to present its case, "so that the trial would be a waste of judicial resources." *Walker v. Packer,* 827 S.W.2d 833, 843 (Tex.1992). Under these circumstances, relator's remedy by eventual appeal is inadequate.

We conclude that the trial court abused its discretion by denying the relator's first motion for a continuance. Because the case was not tried the week of June 25, 2001, however, we need not order the trial court to grant the continuance from that trial setting. The trial court must, however, grant sufficient time for discovery and reasonable notice of the trial setting. *See* TEX. CONST. art I, § 19. We are confident that the trial court will follow the principles set forth in this opinion should these circumstances be repeated. The stay order is lifted.

The motion for sanctions of the real parties in interest is denied.

WRIT CONDITIONALLY GRANTED; STAY ORDER LIFTED; MOTION FOR SANCTIONS DENIED.

BURGESS, Justice, dissenting.

I respectfully, yet vigorously, dissent.[1] The majority issues a writ of mandamus on an extremely sparse record.

### MANDAMUS ? ? ?

The initial question is whether mandamus lies in this instance. Ordinarily, the question of continuances is not subject to mandamus, the notable exception being that of a legislative continuance which is mandated both by statute and the Texas Supreme Court.[2] Thus the question is

---

**3.** Relator complied with TEX.R.APP. P. 52.7(a)(2) by providing an affidavit that no live testimony was presented at the hearing. See *Walker v. Packer,* 827 S.W.2d 833, 837 n. 3 (Tex.1992). Relator complied with TEX. R.APP P. 52.7(a)(1) by providing every material document; the real parties in interest do not contest the completeness of the appellate record.

**1.** I also dissented to the granting of the temporary stay.

**2.** Even this is not absolute. There is a "due process" exception. *See Waites v. Sondock,* 561 S.W.2d 772, 773 (Tex.1977).

whether a local administrative rule requiring a court to honor a "vacation letter" rises to the same dignity as a statute mandating a legislative continuance. I believe it does not.

The majority, citing *Dancy v. Daggett*, 815 S.W.2d 548, 549 (Tex.1991), states: "Under proper circumstances, a trial court's violation of a local mandatory rule may be corrected through mandamus." The operative phrase is "[u]nder proper circumstances." The majority was forced to use this qualifying phrase because of the unique circumstances of *Dancy*. The *Dancy* court stated:

> In the present case, the trial court's actions violated local rules regarding conflicts in docket settings, and effectively deprived Dancy of representation at the hearing on his divorce case. Under these circumstances, we hold that the trial court abused its discretion by refusing to continue the proceedings until such time as Dancy's counsel was available. We further hold that mandamus is an appropriate remedy under these facts, since the trial court's issuance of temporary orders is not subject to interlocutory appeal. *See* Tex.Fam. Code § 11.11(g).

*Dancy*, 815 S.W.2d at 549 (footnote omitted). It is unclear whether the court would have considered mandamus the proper remedy absent the issuance of temporary orders which were not subject to interlocutory appeal. In a later case, the court revisited the appropriateness of mandamus in the context of a non-legislative continuance. In *General Motors Corp. v. Gayle*, 951 S.W.2d 469, 476–77 (Tex.1997), the court stated:

> "The granting or denial of a motion for continuance is within the trial court's sound discretion." *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex.1986). General Motors argues that the trial court abused its discretion by not granting a

continuance for at least thirty days, which would have rendered General Motors' jury request and payment timely. *See Halsell v. Dehoyos*, 810 S.W.2d 371, 371 (Tex.1991) (where case is continued, new trial date determines whether payment of jury fee is timely). Under the unique facts of this case, we agree.

The right to jury trial is one of our most precious rights, holding "a sacred place in English and American history." *White v. White*, 108 Tex. 570, 196 S.W. 508, 512 (1917). Even where a party does not timely pay the jury fee, courts have held that a trial court should accord the right to jury trial if it can be done without interfering with the court's docket, delaying the trial, or injuring the opposing party. *See Dawson v. Jarvis*, 627 S.W.2d 444, 446–47 (Tex.App.— Houston [1st Dist.] 1981, writ ref'd n.r.e.); *Childs v. Reunion Bank*, 587 S.W.2d 466, 471 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.); *Aronoff v. Texas Turnpike Auth.*, 299 S.W.2d 342, 344 (Tex.Civ.App.—Dallas 1957, no writ); *Erback v. Donald*, 170 S.W.2d 289, 294 (Tex.Civ.App.—Fort Worth 1943, writ ref'd w.o.m.). *See also Allen v. Plummer*, 71 Tex. 546, 9 S.W. 672, 673 (1888) ("[T]he failure to make [a timely jury fee payment] does not forfeit the right to have a trial by jury when such failure does not operate to the prejudice of the opposite party.").

Even as the trial court was denying General Motors' motion for continuance, it conceded that the case was not ready for trial. Because of the outstanding discovery issues, including resolution of plaintiffs' motion to attend the crash tests, the trial court decided to hear no evidence until January 29, twenty-six days after General Motors paid its jury fee. Even then, the court acknowledged that outstanding discovery issues would probably cause further multiple inter-

ruptions to the proceedings. At a discovery hearing on January 10, the court again confirmed that trial would be delayed by ongoing discovery:

> I'm going to start this case on the 29th. I'm probably going to hear from two or three or four witnesses, primarily your lay witnesses. I may even hear from your experts. I don't know, but at some point I'm going to shut this thing down for a while to let you guys finish whatever the discovery is that's still outstanding. That may be the crash tests. I don't have a problem with that.

We recognize that occasionally the exigencies of a crowded docket will require a judge to interrupt a bench trial, or even conduct it in segments. But here the trial judge commenced the nonjury trial in the teeth of a demand for a jury trial, timing the proceedings to avoid the requirements of Rule 216(a), with no expectation of reaching the heart of the case for some weeks or months. In light of such preordained delays, General Motors established that a thirty-day continuance to perfect General Motors' jury trial demand would not cause the Delarosas any injury or delay. In fact, the trial court's seriatim trial schedule seems only a sham to hold General Motors to its mistake in not paying the jury fee without penalizing the other side. Under these particular and unusual circumstances, we hold that the trial court abused its discretion by not granting a continuance to allow General Motors' jury request and fee to become timely.

Because the denial of a jury trial can be reviewed by ordinary appeal, *see* *Halsell v. Dehoyos,* 810 S.W.2d 371 (Tex. 1991); *Allen v. Plummer,* 71 Tex. 546, 9 S.W. 672 (1888); *Dawson v. Jarvis,* 627 S.W.2d 444 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *Aronoff v. Texas Turnpike Authority,* 299 S.W.2d 342 (Tex.Civ.App.—Dallas 1957, no

writ), mandamus is generally not available to review such a ruling. Similarly, the denial of a motion for continuance is an incidental trial ruling ordinarily not reviewable by mandamus. In the absence of any other error, we would not grant extraordinary relief merely to revise a trial judge's scheduling order, however perverse. This case, however, presents special circumstances, in that we must remedy the crash-test order by interlocutory mandamus review. Under these special circumstances, the interests of judicial economy dictate that we should also remedy the trial court's denial of the right of jury trial by mandamus.

For the foregoing reasons, we conditionally grant writ of mandamus compelling the trial court to vacate its January 22, 1996, crash-test order. We further direct the trial court to abort or mistry the nonjury trial commenced in January 1996, and to place the case on its jury docket in accordance with General Motors' written request and payment of jury fee, which are now timely.

Here, the court was quite clear. "... Similarly, the denial of a motion for continuance is an incidental trial ruling ordinarily not reviewable by mandamus. In the absence of any other error, we would not grant extraordinary relief merely to revise a trial judge's scheduling order, however perverse. This case, however, presents special circumstances, in that we must remedy the crash-test order by interlocutory mandamus review." *Id.* at 477. The language of the court reinforces the long-standing rule that mandamus is not appropriate to review the denial of a motion for continuance absent some special circumstances. There are no special circumstances in this case, consequently mandamus is inappropriate.

## PUBLIC POLICY

The majority also attempts to justify their action by making a "public policy" argument. With all due respect to my colleagues, equating legislative service to "allowing those who devote their lives to the practice of law to also devote some reserved time to their families," is a bit of a stretch.

The rationale behind the mandatory legislative continuance was first enunciated in *Mora v. Ferguson*, 145 Tex. 498, 199 S.W.2d 759, 763 (1947), where the court stated:

... The broad public policy which supports Art. 2168a, supra, and the construction we here give it has been well stated by a district court of appeals of California in construing a like statute of that state, in Bottoms v. Superior Court, supra (82 Cal.App. 764, 256 P. [422,] 424 [(1927)]), in these words: 'The purpose of the provision of section 1054 of the Code of Civil Procedure is obvious. ·It will readily be conceded that there is no activity connected with and essential to the preservation and maintenance of the social fabric of greater importance than that of the functioning of the legislative department of a state. In exercising and administering that branch of the sovereign powers of a state that is appropriated to it by the people, in a government such as ours, in which the sovereign powers are divided into and assigned to three different, distinct, and independent departments, the Legislature is required to deal with the most sacred of human rights-rights which directly affect the life, the liberty and the property of the citizen. The members of that body, therefore, must give constant and uninterrupted attention to their duties as such while it is in session lest there be either advertently or inadvertently bad legislation put over or good laws repealed, the effect of which would necessarily be to work, for the time, irreparable damage to the state. But these propositions are well understood and their soundness will be conceded, since it cannot possibly be doubted that the members of the Legislature, particularly such members as may belong to the legal profession and engaged actively in the practice thereof, should be relieved by the law from concerning themselves with extraneous matters or interests not pertaining to their legislative duties while they are in attendance on sessions of the Legislature and actually prosecuting their duties as such. On the other hand, the suggestion may be ventured, significant in the present connection, that a practicing lawyer deals with a science involving the most abstruse learning, in its remedial and procedural as well as its substantive branch, and in conserving or preserving, or protecting or defending the rights of his clients when such rights are questioned in the judicial tribunals, the demand for his undivided attention to those causes is as necessary or imperative as is the demand upon him for like attention while he is engaged in performing the duties of a member of the Legislature.'

Moreover, it is to the public interest that worthy and qualified citizens from all walks of life be encouraged to offer for legislative service. That interest would not be served as to members of the legal profession if it should appear that they will be forced to surrender much of their law practice in exchange for the meager compensation paid for service as a member of the legislature. State v. Clark, 214 Mo.App. 536, 262 S.W. 413 [(1924)]; Bell v. State, 63 Okl. Cr. [424], 75 P.2d 1157 [(1938)].

The constitutionality of the legislative continuance statute, *vis a vis*, a separation of powers argument, was examined in *Gov-*

*ernment Serv. Ins. Underwriters v. Jones,* 368 S.W.2d 560, 565–567 (Tex.1963), and the court reaffirmed its holding and rationale in *Mora.*

Requiring a legislator/lawyer to miss votes on legislation disenfranchises his constituents.[3] Requiring a lawyer to postpone a vacation[4] certainly does not rise to this level of importance to the public.

### INHERENT POWERS

An argument can be made that the inherent powers of a district judge trumps administrative regional rules. After all, a district court is founded in our state constitution, TEX. CONST. art. 5, § 1, and the legislature has recognized courts have inherent powers. *See* TEX. GOV'T CODE ANN. § 21.001(a)(b) (Vernon Supp.2001). "A court's inherent powers are 'those which it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity.'" *Continental Carbon Co. v. Sea–Land Serv., Inc.,* 27 S.W.3d 184, 189 (Tex.App.—Dallas 2000, pet. denied)(quoting *Eichelberger v. Eichelberger,* 582 S.W.2d 395, 398 (Tex.1979)). Like-

wise, there is clear statutory authority for the adoption of administrative regional rules. *See* TEX. GOV'T CODE ANN. § 74.048(c)(1) (Vernon 1998). But, can a majority of the District Judges in an administrative district control the docket of a constitutional officer?[5] I think not. No doubt a district judge should endeavor to follow the rules, but the judge should not forfeit his constitutional and common law authority to manage his docket. An experienced judge, such as the one involved here, who is familiar with the litigation, the parties and the lawyers, must be given the discretion to control his docket, especially large toxic tort cases. I believe he has this discretion, even if only through his inherent powers.

### THE RULE 245 ISSUE

The majority, sua sponte, holds there has been a violation of TEX.R. CIV. P. 245[6] and the notice given violated NARCO's due process rights. These issues were neither raised by NARCO before the trial court nor in their petition or brief to this court. For the majority to overrule the

---

**3.** If the lawyer is a member of the House of Representatives, this is approximately 139,-000; if a member of the Senate, it is approximately 672,000. (Texas Legislative Council, Population Analysis with County Subtotals, House and Senate Districts, 2000 Census Data, 2001).

**4.** Keeping in mind the lawyer in this case created the situation, since the case was set long before he designated his vacation period.

**5.** There are 115 district judges in the 2nd Administrative region, 59 in Harris County and 56 in the other counties. (Annual Report of the Texas Judicial System (2000) p. 138). If administrative region rules are sacrosanct then perhaps the 59 Harris County judges (a majority plus two) could enact and enforce a regional rule that stated Harris County District Courts would have preference over the other courts in the administrative region when a scheduling conflict arose.

**6.** **Rule 245. Assignment of Cases for Trial**

The Court may set contested cases on written request of any party, or on the court's own motion, with reasonable notice of not less than forty-five days to the parties of a first setting for trial, or by agreement of the parties; provided, however, that when a case previously has been set for trial, the Court may reset said contested case to a later date on any reasonable notice to the parties or by agreement of the parties. Noncontested cases may be tried or disposed of at any time whether set or not, and may be set at any time for any other time.

A request for trial setting constitutes a representation that the requesting party reasonably and in good faith expects to be ready for trial by the date requested, but no additional representation concerning the completion of pretrial proceedings or of current readiness for trial shall be required in order to obtain a trial setting in a contested case.

trial court in such a manner seems to violate the rule in *San Jacinto River Authority v. Duke*, 783 S.W.2d 209, 210 (Tex. 1990). In any event, the majority ignores the plain record, as sparse as it is. This case obviously has multiple plaintiffs and multiple defendants. Just as obvious, in spite of the sparse record, is that the parties were operating under a scheme sanctioned by the trial court and apparently agreed to by the parties. For the majority to state "lack of sufficient notice is shown on the face of the record" is a conclusion not at all supported by the record. Furthermore the majority is simply wrong when they state: "two weeks notice of the first trial setting...." It is true the notice of which ten particular plaintiffs would be the subject of the trial was not determined until two weeks prior to the June 25th trial setting. However, the June 25th trial setting was known to NARCO since November, 2000.

The majority cites several cases in support of their due process holding. All are distinguishable. In *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 812 (Tex.1983), a judgment was entered without *any* hearing whatsoever. In *Brosseau v. Ranzau*, 28 S.W.3d 235, 239 (Tex.App.—Beaumont 2000, no pet.), counsel received actual notice of a hearing less than *twenty-four hours* before the time set for hearing. The case of *In the Matter of the Marriage of Parker*, 20 S.W.3d 812 (Tex.App.—Texarkana 2000, no pet.), is somewhat akin to this case. In that case, the husband received fourteen days' notice from his wife's attorney. *Id.* at 815. The court held this notice was reasonable in that it gave him adequate time to protect his rights and thus comported with due process. *Id.* at

818–19. The court noted he had adequate time, for example, to write a letter to the court administrator requesting a clarification of the actual trial setting and it was also adequate for him to move to strike the trial setting and *ask for a continuance. Id.* at 819 (emphasis ours). This is the exact procedural status of NARCO. They filed their motion for continuance. If NARCO was denied due process, as a matter of law, or had Rule 245 been violated,[7] then end of analysis; yet the majority also grants the mandamus on the discovery portion of the motion for continuance.

### THE DISCOVERY ISSUE

Clearly mandamus will not lie in this instance *vis a vis* the discovery issue. In *Walker v. Packer*, 827 S.W.2d 833, 843–44 (Tex.1992)(footnote omitted), the court set out when mandamus will lie in a discovery dispute, stating:

First, a party will not have an adequate remedy by appeal when the appellate court would not be able to cure the trial court's discovery error. This occurs when the trial court erroneously orders the disclosure of privileged information which will materially affect the rights of the aggrieved party, such as documents covered by the attorney-client privilege, *West v. Solito*, 563 S.W.2d 240 (Tex.1978), or trade secrets without adequate protections to maintain the confidentiality of the information. *Automatic Drilling Machines v. Miller*, 515 S.W.2d 256 (Tex.1974).... It may also occur where a discovery order compels the production of patently irrelevant or duplicative documents, such that it clearly constitutes harassment or

---

**7.** Several courts have held the 45 day notice provision of Rule 245 is mandatory. *See Smith v. Lippmann*, 826 S.W.2d 137, 138 (Tex.1992); *Hardin v. Hardin*, 932 S.W.2d 566, 567 (Tex.App.—Tyler 1995, no writ); *Bell Helicopter Textron, Inc. v. Abbott*, 863 S.W.2d 139, 140 (Tex.App.—Texarkana 1993, writ denied); *Carson v. Hagaman*, 824 S.W.2d 267, 269 (Tex.App.—Eastland 1992, no writ); *Simpson v. Stem*, 822 S.W.2d 323, 324 (Tex. App.—Waco 1992, orig. proceeding).

imposes a burden on the producing party far out of proportion to any benefit that may obtain to the requesting party. *See, e.g., Sears, Roebuck & Co. v. Ramirez,* 824 S.W.2d 558, 35 Tex.Sup.Ct.J. 454 (1992) (demand for tax returns); *General Motors Corp. v. Lawrence,* 651 S.W.2d 732 (Tex.1983) (demand for information about all vehicles for all years).

Second, an appeal will not be an adequate remedy where the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error. It is not enough to show merely the delay, inconvenience or expense of an appeal. Rather, the relator must establish the effective denial of a reasonable opportunity to develop the merits of his or her case, so that the trial would be a waste of judicial resources. We recently held that when a trial court imposes discovery sanctions which have the effect of *precluding a decision on the merits of a party's claims*—such as by striking pleadings, dismissing an action, or rendering default judgment—a party's remedy by eventual appeal is inadequate, unless the sanctions are imposed simultaneously with the rendition of a final, appealable judgment. *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 919 (Tex.1991). Similarly, a denial of discovery going to the heart of a party's case may render the appellate remedy inadequate.

Finally, the remedy by appeal may be inadequate where the trial court disallows discovery and the missing discovery cannot be made part of the appellate record, or the trial court after proper request refuses to make it part of the record, and the reviewing court is unable to evaluate the effect of the trial court's error on the record before it. *See Tom L. Scott, Inc. v. McIlhany,* 798 S.W.2d 556, 558 (Tex.1990) ("[M]anda-mus is the only remedy because the protective order shields the witnesses from deposition and thereby prevents the evidence from being part of the record."); *see generally Jampole [v. Touchy],* 673 S.W.2d [569] at 576 [(Tex. 1984)] ("Because the evidence exempted from discovery would not appear in the record, the appellate courts would find it impossible to determine whether denying the discovery was harmful."). If the procedures of Tex.R.Civ.P. 166b(4) are followed, this situation should only rarely arise. If and when it does, however, the court must carefully consider all relevant circumstances, such as the claims and defenses asserted, the type of discovery sought, what it is intended to prove, and the presence or lack of other discovery, to determine whether mandamus is appropriate.

None of the circumstances described above are present in this case. Taking NARCO's motion at face value, this is, at best, a case of incomplete discovery; not a case of denied discovery as in *Thompson v. Davis,* 901 S.W.2d 939 (Tex.1995)(trial court entered an order denying discovery). Nor is this a case involving the disclosure of privileged information or where the missing discovery could not be made a part of the appellate record. The majority attempts to characterize this case as the denial of discovery that goes to "the heart of" NARCO's case yet NARCO never made such a claim in their motion for continuance.

NARCO's motion for continuance alleged discovery was incomplete due to (1) incomplete depositions of co-workers, (2) the "medical work-up" of the plaintiffs, and (3) inability to obtain records of American Cast Iron Pipe Company (ACIPCO). A motion for continuance seeking time for discovery must comply with Tex.R. Civ. P.

252,[8] and must, among other things, describe the evidence sought, explain its materiality, and show the party requesting the continuance has used due diligence to obtain the evidence. *See Grace v. Duke*, 54 S.W.3d 338, 341 (Tex.App.—Austin no pet. h.), and cases cited therein. A court is generally presumed to have correctly exercised its discretion when it denies a motion for continuance that does not comply with the rules governing such motions. *See Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex.1986). NARCO's motion does not satisfy these requirements, specifically the one of due diligence. NARCO makes conclusory statements about depositions needing to be taken, yet they do not identify what depositions have been taken and what steps have been accomplished to take the necessary depositions. NARCO's own motion establishes the lack of diligence. For example, NARCO states "The independent medical examinations *were* scheduled for June 11 12, 2001." (Emphasis added). They are careful not to state the examinations had been taken, nor do they state the plaintiffs were any way responsible for the examinations not having been

taken. Additionally, NARCO complains in their motion about having to subpoena purchasing records from ACIPCO. Again, NARCO fails to apprize the trial court of when the subpoenas were requested, when the subpoenas were served or when NARCO expects compliance with the subpoenas. Clearly NARCO's motion, in regard to the discovery matters, failed to meet the requirements of Rule 252. Therefore, the judge could not have been incorrect in denying the motion in that regard.

In summary, the trial judge was aware of all the circumstances involving the parties, the attorneys [9] and the scheduling of the case. He was, and is, in a superior position to know his docket situation and when to schedule multi-party complex litigation.[10] The trial judge did not, in my view, abuse any discretion in refusing to honor a self-created dilemma. I would deny the mandamus.[11]

---

8. **Rule 252. Application for Continuance**
   If the ground of such application be the want of testimony, the party applying therefor shall make affidavit that such testimony is material, showing the materiality thereof, and that he has used due diligence to procure such testimony, stating such diligence, and the cause of failure, if known; that such testimony cannot be procured from any other source; and, if it be for the absence of a witness, he shall state the name and residence of the witness, and what he expects to prove by him; and also state that the continuance is not sought for delay only, but that justice may be done; provided that, on a first application for a continuance, it shall not be necessary to show that the absent testimony cannot be procured from any other source.
   The failure to obtain the deposition of any witness residing within 100 miles of the courthouse of the county in which the suit is pending shall not be regarded as want of diligence when diligence has been used to

secure the personal attendance of such witness under the rules of law, unless by reason of age, infirmity or sickness, or official duty, the witness will be unable to attend the court, or unless such witness is about to leave, or has left, the State or county in which the suit is pending and will not probably be present at the trial.

9. For example, in volume 4 of the 2001 Texas Legal Directory, the law firm of Vinson & Elkins, LLP has approximately 764 lawyers.

10. The real parties in interest identify four defendants in the litigation. Under the regional rules, each lead counsel may designate four weeks of vacation. If each one utilized the maximum (16 weeks), the trial could never be held during June, July and August (12 or 13 weeks depending upon the year).

11. Even so, I would not impose sanctions; thus I concur with the majority in that regard.