NO. 07-03-0017-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



FEBRUARY 18, 2004



______________________________




RANDY CORTINEZ, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;



NO. 43,412-E; HONORABLE ABE LOPEZ, JUDGE



_______________________________


 

Before QUINN and REAVIS, JJ. and BOYD, S.J. (1)

MEMORANDUM OPINION


 Following a plea of not guilty, appellant Randy Cortinez was convicted by a jury of
murder and punishment was assessed at 80 years confinement and a $10,000 fine. 
Presenting three points of error, appellant asserts the trial court erred (1) in denying his
request for an instructed verdict of acquittal because the evidence was legally insufficient
to support a conviction for murder; (2) in charging the jury on the law of parties when the
evidence is factually insufficient to support a finding that he acted as a party to the murder;
and (3) at the punishment phase of the trial by reconvening the jury after it had been
dismissed and left the courtroom. Based upon the rationale expressed herein, we affirm.

 On the night of July 7, 2000, appellant, his brothers, Domingo and Michael, and their
friend, Chris, were at a bar they frequented. The victim and his friend, Johnny, who were
not regular patrons of the bar, arrived near closing time to have some drinks and dance. 
At approximately 1:00 a.m. on July 8, the victim was ejected from the bar for being drunk
and obnoxious. Shortly after last call was announced, Johnny noticed the victim was not
in the bar and went outside to look for him. He observed appellant and his two brothers,
who were all heavy set, and a female near the victim. The victim was five feet, four inches
tall and weighed 103 and 1/2 pounds. Johnny testified that although he did not see
appellant attack the victim, while attempting to aid the victim and instructing him to run, he
suffered a deep cut on the side of his face. Johnny ran along the sidewalk shouting that
his friend was being killed. Moments later, Johnny saw the victim lying in a puddle of
blood. In shock, Johnny ran to his car and hastily drove away. 

 According to the manager of the bar and two security guards, after the victim was
ejected from the bar, Domingo and his girlfriend had an argument and stepped outside to
talk. Chris testified that he, appellant, and Michael followed Domingo outside. Domingo's
girlfriend testified that she and Domingo were arguing and that he was drunk and she was
crying. Appellant and Michael tried to break up the argument and calm her down. The
victim approached the group several times inquiring about the welfare of Domingo's
girlfriend. He was told several times by appellant and Michael that everything was fine and
asked to leave. Upon interfering in the argument for a third time, the victim was attacked
by appellant and Michael. Evidence was presented that the victim was punched and
kicked, and conflicting evidence was presented on whether appellant used a knife or other
object to inflict the victim's wounds. Chris eventually pulled appellant and Michael off the
victim and urged them to get into their car. According to Chris, after he broke up the fight,
the victim remained on the ground with blood around him. The Cortinez brothers left in a
car driven by a female friend, and Chris drove away in his own car. 

 The bar manager testified that after the Cortinez brothers left, he noticed the victim
was "bleeding out of everywhere." The bartender called the police and one of the
responding officers testified that when he arrived at the scene he found the victim lying in
a large pool of blood. According to the officer, the victim was not moving and his breathing
was very labored. Another officer took pads from a first aid kit and packed the victim's
wounds and began CPR until the ambulance arrived. The victim did not survive the attack
and the medical evidence established that he suffered 18 wounds-14 were stabs and 4
were incise--to the neck area with the fatal wounds perforating his left carotid artery.

 TABC officers in an unmarked car who were preparing to go off duty heard the radio
call about the fight and coincidentally, while they were stopped at a red light, noticed that
the passengers in the car next to them looked suspicious. They followed the car to a
residence and notified local law enforcement to follow up. Several police officers were
dispatched to the residence. They approached the house on foot in a tactical manner with
weapons drawn believing the suspects were armed and dangerous. Michael and three
females were standing in the driveway. Michael had blood on his pants and was asked to
assume the position. Shortly thereafter appellant approached from the backyard and after
officers noticed blood on his pants, he was ordered to his knees and handcuffed.

 By his first point of error, appellant asserts the trial court erred in denying his request
for an instructed verdict of acquittal because the evidence is legally insufficient to support
a conviction for murder. We disagree. In conducting a legal sufficiency review, we must
determine whether, after viewing the evidence in the light most favorable to the
prosecution, any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789,
61 L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 157 (Tex.Cr.App. 1991),
overruled on other grounds, Paulson v. State, 28 S.W.3d 570, 573 (Tex.Cr.App. 2000). 
As an appellate court, we may not sit as a thirteenth juror, but must uphold the jury's verdict
unless it is irrational or unsupported by more than a mere modicum of evidence. Moreno
v. State, 755 S.W.2d 866, 867 (Tex.Cr.App. 1988).

 Before determining whether the evidence is legally sufficient to sustain the
conviction, we must review the elements the State was required to prove. In order to be
guilty of murder, the State was required to prove that appellant intentionally or knowingly
caused the death of the victim, or intended to cause serious bodily injury and committed
an act clearly dangerous to human life that caused the death. Tex. Pen. Code Ann. §
19.02(b)(1) and (2) (Vernon 2003). Section 6.03 of the Penal Code defines the culpable
mental states of "intentionally" and "knowingly" as follows: 

 (a) A person acts intentionally . . . with respect to the nature of his conduct
or to a result of his conduct when it is his conscious objective or desire to
engage in the conduct or cause the result.

 (b) A person acts knowingly . . . with respect to the nature of his conduct or
to circumstances surrounding his conduct when he is aware of the nature of
his conduct or that the circumstances exist. A person acts knowingly . . . with
respect to a result of his conduct when he is aware that his conduct is
reasonably certain to cause the result.


 Murder, intentionally or knowingly committed, is a result oriented offense. Cook v.
State, 884 S.W.23d 485, 490 (Tex.Cr.App. 1994). The accused must have intended the
result, death, or have been aware that his conduct was reasonably certain to cause that
result. Id. Further, in establishing intent or knowledge and when faced with a record that
supports conflicting inferences, we must presume-even if it does not affirmatively appear
in the record-that the trier of fact resolved any such conflict in favor of the prosecution and
must defer to that resolution. Couchman v. State, 3 S.W.3d 155, 163 (Tex.App.-Fort
Worth 1999, pet. ref'd), citing Matson v. State, 819 S.W.2d 839, 846 (Tex.Cr.App. 1992).

 Eye witness testimony established that the victim was severely beaten by appellant. 
Appellant's friend, Chris, testified he saw appellant down on one knee repeatedly
"punching" the victim with his right hand and that he had to pull appellant off of him. The
manager of the bar testified that when he went to the parking lot to conduct a "routine
check" prior to closing, he observed appellant on top of the victim "going at him" and that
he noticed a reflection from a blade that appellant was holding in his right hand. During
direct examination, the witness claimed he saw appellant use a knife to stab the victim;
during cross-examination, however, he wavered and testified he could not be sure if
appellant used a knife. One of the security guards from the bar, who was familiar with the
Cortinez brothers, testified that while the victim was laying face down, he observed
appellant on top of him with his left arm underneath the victim's neck while he was striking
him with his right hand. He did not see appellant use a knife or other sharp instrument. 

 Domingo's girlfriend and Chris testified that appellant worked for a fire and water
restoration service and that his job required him to use all sorts of knives and sharp
instruments. Domingo's girlfriend claimed she did not see appellant use a weapon during
the fight.

 The medical examiner explained that the victim died from 18 wounds, two of them
being fatal wounds to his neck that perforated his carotid artery. Some of the wounds
indicated the use of a sharp instrument, probably one with a single-edge. The victim also
sustained numerous bruises and contusions caused by blunt force most likely resulting
from being kicked or being hit with a knee or fist.

 Forensic evidence established that the victim's blood was found on the running
board of the right passenger side of the car in which appellant left the scene. The victim's
blood was also found on appellant's boots, jeans, and hands. Although clothing and boots
from three other suspects was also tested, a DNA analyst testified that the largest volume
of the victim's blood was found on appellant's clothing. 

 Based on the foregoing evidence, including the conflicting testimony regarding
whether appellant used a knife or sharp instrument, we must defer to the jury's resolution
in favor of the prosecution that appellant was aware that his conduct was reasonably
certain to cause death. We conclude that reviewing the evidence in the light most
favorable to the prosecution, any rational trier of fact could have found the essential
elements of murder beyond a reasonable doubt. Appellant's first point of error is overruled.

 By his second point of error, appellant challenges the trial court's inclusion in the
charge of the law of parties contending the evidence is factually insufficient to support a
finding that he acted as a party to murder. We disagree. In conducting a factual
sufficiency review, the Court of Criminal Appeals has directed us to ask whether a neutral
review of all the evidence, both for and against the finding, demonstrates that the proof of
guilt is so obviously weak as to undermine confidence in the fact finder's determination, or
the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. 
Johnson v. State, 23 S.W.3d 1, 11 (Tex.Cr.App. 2000) (adopting complete civil factual
sufficiency formulation); see also King v. State, 29 S.W.3d 556, 563 (Tex.Cr.App. 2000). 
Accordingly, we will reverse the fact finder's determination only if a manifest injustice has
occurred. Johnson, 23 S.W.3d at 12. In conducting this analysis, we may disagree with
the jury's determination, even if probative evidence supports the verdict, but must avoid
substituting our judgment for that of the fact finder. See Santellan v. State, 939 S.W.2d
155, 164 (Tex.Cr.App. 1997). It is the exclusive province of the fact finder to determine the
credibility of the witnesses and the weight to be given their testimony. Johnson v. State,
571 S.W.2d 170, 173 (Tex.Cr.App. 1978); Armstrong v. State, 958 S.W.2d 278, 284
(Tex.App.--Amarillo 1997, pet. ref'd).

 The jury charge provides in part:

 All persons are parties to an offense who are proven beyond a reasonable
doubt to be guilty of acting together in the commission of the offense. A
person is criminally responsible as a party to an offense if the offense is
committed by his own conduct, by the conduct of another for which he is
criminally responsible, or both.

 A person is criminally responsible for an offense committed by the conduct
of another if, acting with intent to promote or assist the commission of the
offense, he solicits, encourages, direct, aids, or attempts to aid the other
person to commit the offense. Mere presence alone will not constitute one
a party to an offense.


The charge also authorized the jury to convict appellant as a party or a principal actor. 
During the charge conference defense counsel objected to the inclusion of the law of
parties on the ground that the evidence showed that if appellant "did anything, he was
acting alone."

 In determining whether a charge on the law of parties is raised by the evidence, the
trial court may look to events occurring before, during, and after the commission of the
offense. Goff v. State, 931 S.W.2d 537, 544-45 (Tex.Cr.App. 1996), cert. denied, 520 U.S.
1171, 117 S.Ct. 1438, 137 L.Ed.2d 545 (1997); Medellin v. State, 617 S.W.2d 229, 231
(Tex.Cr.App. 1981). A defendant is criminally responsible for an offense committed by
another if, with the intent to promote or assist the commission of the offense, he solicits,
encourages, directs, aids, or attempts to aid the other in the offense. Tex. Pen. Code Ann.
§ 7.02(a)(2) (Vernon 2003).

 Chris testified that appellant and his brother Michael were beating the victim and
that he had to pull them both off of him. Domingo's girlfriend testified that when police
arrived at the Cortinez residence and arrested Michael, he said, "if anything happened, I
did it." Forensic evidence established that the victim's DNA was found on Michael's boots
and jeans and that Michael had a fresh cut on a finger on his left hand. Whether appellant
assisted or aided Michael in beating the victim or whether he was the primary actor, we
conclude after reviewing all the record evidence under Johnson, 23 S.W.3d at 11, and
without substituting our own judgment, that the evidence is factually sufficient to support
the trial court's inclusion in the charge of the law of parties. Point of error two is overruled.

 By his third point of error, appellant contends the trial court erred by reconvening the
jury after it had been dismissed and left the courtroom. For the reasons expressed herein,
the point is moot. After the trial court received the jury's verdict on punishment and before
pronouncing sentence, it announced the content of verdict number four of the charge:

 We the jury, having found the Defendant guilty of the indicted offense of
murder, assess punishment at confinement in the Texas Department of
Criminal Justice Institutional Division for a period of 80 years, and assess a
fine in the amount of $10,000.00, signed by the presiding juror.

 

After the trial court thanked the jurors for their service and asked the bailiff to escort them
out of the courtroom, the trial court realized that the last page of the charge containing
verdict number seven which placed appellant on community supervision for 80 years had
also been signed by the presiding juror. However, his signature was crossed out and the
other jurors had placed their initials near his marked out signature. (2) 

 In an abundance of caution, the trial court directed the bailiff to recall the jurors. The
record reflects the jurors were headed to their cars when asked to return to the courtroom. 
After defense counsel's numerous objections to recalling the jury and his motion for mistrial
were overruled, the jurors were reconvened and instructed by the court to retire and give
some indication of their intent in signing two verdict forms. After deliberating a second
time, they returned with the same charge which contained a note from the presiding juror
with initials of other jurors on verdict number seven indicating it was signed in error and that
verdict number four represented their unanimous verdict. 

 Once the trial court accepts a verdict and discharges a jury, it is not authorized to
recall the jury to have a verdict corrected. West v. State, 170 Tex. Crim. 317, 340 S.W.2d
813, 815 (1960); see also Webber v. State, 652 S.W.2d 781, 782 (Tex.Cr.App. 1983). 
However, when the jury has not separated or has only momentarily separated and is still
in the presence of the court and it appears that no one has talked to the jurors about the
case, the court may recall the jurors to correct their verdict. Webber, 652 S.W.2d at 782. 
West and Webber, however, are distinguishable and do not apply because they involved
corrected verdicts. Here, although the jurors had left the courtroom and were headed to
their cars, the trial court did not err in reconvening them because the proper verdict had
already been returned and received by the trial court following the jury's initial deliberations. 
Verdict number seven, which had been signed in error, had been crossed out and
approved by all jurors prior to their discharge. Thus, further deliberations by the jury after
being reconvened did not result in a corrected verdict as in West and Webber and similar
cases cited by appellant. We find appellant's third contention moot.

 Accordingly, the judgment of the trial court is affirmed.

 Don H. Reavis

 Justice



Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals sitting by assignment.
2. The jury verdict forms at the punishment stage consisted of three letter size pages.
The first page contained paragraphs numbered 1, 2, and 3 with a signature line for each
for the presiding juror for the assessment of punishment. Similarly, the second page
contained paragraphs 4, 5, and 6 with a signature line for each for the presiding juror, and
the last page contained only paragraph 7 with a signature line for the presiding juror. 
When the jury first returned with its verdict, the presiding juror presented the three pages
as its verdict, reflecting by signature of the presiding juror that the jury had decided on
paragraph 4 on the second page. Although the trial judge did not notice the third page,
after he discharged the jury and was doing his "judicial housekeeping," he noticed that
paragraph 7 had been completed and signed by the presiding juror but crossed out his
signature and all of paragraph 7.



";
 mso-fareast-font-family:"Times New Roman";}
p.MsoFootnoteText, li.MsoFootnoteText, div.MsoFootnoteText
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";}
span.MsoFootnoteReference
 {mso-style-noshow:yes;
 mso-style-priority:99;
 vertical-align:super;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:"Times New Roman";}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Calibri;
 mso-hansi-font-family:Calibri;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("07-10-0125.cv\(2\)%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-10-0125.cv\(2\)%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-10-0125.cv\(2\)%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-10-0125.cv\(2\)%20opinion_files/header.htm") ecs;}
@page Section1
 {size:8.5in 11.0in;
 margin:1.5in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-title-page:yes;
 mso-footer:url("07-10-0125.cv\(2\)%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.Section1
 {page:Section1;}
-->








NO. 07-10-0125-CV

 

IN THE COURT OF APPEALS

 

FOR THE SEVENTH DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL D

 

APRIL 16, 2010

 

______________________________

 

 

 

IN
RE ROBERT WAYNE VEIGEL, 

RELATOR

 

_________________________________

 

 

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

MEMORANDUM OPINION

            Relator, Robert Wayne
Veigel, Individually and in his capacity as Co-Trustee of the Ardella Veigel
Trust No. 2, seeks a writ of mandamus from this Court compelling the Honorable John
Board, Judge of the 181st District Court of Potter County, to grant a motion
for continuance in the underlying legal malpractice proceeding.[1]  Based upon the standard of review that we
must apply in cases such as this, we deny the relief requested.

Background

            The underlying proceeding is a legal
malpractice lawsuit filed by Relator on August 18, 2006.  Prior to January 7, 2010, Relator was
represented by Jerry Gunn.  On that date,
the trial court granted Gunn's motion to withdraw.  The motion to withdraw was not based upon any
fault of Relator, but was instead due solely to Gunn's retirement from the
practice of law.  On January 15, 2010,
Relator's present counsel, Mitchell A. Toups, filed a Notice of Appearance and Motion
for Continuance.  That motion for
continuance was granted and the case was continued until the trial court's
docket call to be heard on March 11, 2010.

            On March 11, 2010,
despite an announcement of Not Ready on behalf of Relator, the trial court
scheduled the underlying proceeding for trial to commence on April 19,
2010.  On March 16, 2010, Relator filed
the Motion for Continuance that is
the subject of this proceeding.  On March 24, 2010, the sole remaining defendant
filed a response in opposition to the motion contending (1) the motion was not
supported by affidavit as required by Rules 251 and 252 of the Texas Rules of
Civil Procedure, and (2) the grounds for continuance stated in the motion did
not constitute sufficient cause.  In
response thereto, Relator filed a Supplemental
Motion for Continuance, with affidavit attached, bearing a certificate of
service dated March 25, 2010.  On March
26, 2010, the trial court signed an order denying Relator's motion wherein it
stated, [t]he Court finds Plaintiff has not established sufficient cause supported
by affidavit.  Believing the sole basis
for the trial court's ruling to be the lack of an affidavit, on March 30, 2010,
Relator filed a Motion for
Reconsideration.  On March 31, 2010,
the trial court advised counsel that it would not entertain a hearing on the
motion for reconsideration and then reiterated the April 19th trial
setting.  In response thereto, Relator
filed this Petition for Writ of Mandamus on
April 12, 2010.   

Mandamus Standard of Review

            AMandamus issues only to correct a
clear abuse of discretion or the violation of a duty imposed by law when there
is no other adequate remedy by law.@  Walker v. Packer,
827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding), quoting Johnson v.
Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1985) (orig.
proceeding).

            Generally, an appellate
court may not grant mandamus relief where resolution of a fact issue underlies
the trial court=s decision.  Mendoza v. Eighth Court of Appeals, 795
S.W.2d 712, 714 (Tex. 1990) (recognizing that an appellate court may not deal
with disputed issues of fact via a mandamus proceeding).  However, where there are no disputed fact
issues relevant to the decision, mandamus will lie if the trial court abuses
its discretion by misapplying controlling legal principles to uncontroverted
facts.  In re Ferguson, 172 S.W.3d
122 (Tex.App.Beaumont 2005, orig. proceeding).

Discussion

            The denial of a motion
for continuance is an incidental trial court ruling ordinarily not subject to
review by mandamus.  In re Allied Chemical Corp., 227 S.W.3d
652, 658 (Tex. 2007).  An exception
to this general rule occurs when there are special circumstances which are
themselves reviewable on petition for writ of mandamus.  Gen. Motors
Corp. v. Gayle, 951 S.W.2d 469, 477
(Tex. 1997).  Here, Relator contends the
trial court erred by either failing to consider the affidavit filed in support
of his Supplemental Motion for
Continuance or by refusing to hear argument on his Motion to Reconsider.  Even
assuming that the sole basis of the trial court's denial of the continuance motion
on March 26th was the absence of an affidavit (an assumption we make
solely for purposes of this discussion) there is nothing that compels us to
likewise conclude that to also be the sole reason for the trial court's refusal
to entertain Relator's reconsideration motion on March 31st.  On March 31st, the trial court
could have concluded that a hearing on Relator's reconsideration motion was
unnecessary because the continuance motion was not supported by sufficient
cause.  Under either construction, the
trial court's order is not factually incorrect as alleged by Relator.  Accordingly, we are constrained to review the
trial court's order to determine whether the trial court abused its discretion
in denying a continuance under the facts of this case.

            As good cause for
continuance, Relator contends that his new counsel has not been given adequate
time to investigate the case and prepare for trial.  However, the limited record before this Court
indicates that Relator's counsel was aware of a
pending trial setting when he accepted representation and entered an appearance
in this cause.  In fact, Relator's counsel previously received a continuance of that
earlier trial setting.  Relator further
contends that a continuance is necessary in order to conduct additional
pre-trial discovery, including the deposition of the defendant's expert
witness.  In support thereof, the
affidavit of Relator's counsel states that he has requested that defense
counsel provide me with dates for the deposition of their expert without
identifying the due diligence that he has exercised to secure that
testimony.  The inability to depose an
expert witness is not sufficient cause for a continuance where the movant has
failed to diligently utilize the Rules of Civil Procedure for discovery
purposes.  See State v. Wood Oil Distrib., Inc., 751 S.W.2d 863, 865 (Tex.
1988).  Where a case has been pending
more than three years, and where Relator's counsel
has had more than three months to investigate the case and prepare for trial, we
are unable to conclude that the trial court clearly abused its discretion by denying
a second motion for continuance. 
Accordingly, Relator's petition for writ of mandamus is denied.  

                                                                                    

                                                                                    Patrick
A. Pirtle

                                                                                          Justice

 

Quinn, C.J., concurs in result.

 











[1]The
underlying proceeding is Cause No. 94,778-B, styled Robert Wayne Veigel, et al.
v. W. Calloway Huffaker, Individually and d/b/a W.
Calloway Huffaker, P.C., and Robert E. Golden, P.C.; In the 181st District
Court in and for Potter County, Texas. 
Pleadings contained within the limited record before this Court indicate
that W. Calloway Huffaker previously reached a settlement with the Plaintiffs
and the claims against him were dismissed.