**GENERAL MOTORS CORPORATION,**
Relator,

v.

**The Honorable J. Ray GAYLE,**
**III, Respondent.**

No. 97–0125.

Supreme Court of Texas.

Argued March 25, 1997.

Decided July 9, 1997.

Rehearing Overruled Oct. 2, 1997.

John R. Gilbert, Angleton, Scott D. Lassetter, Jonathan W. Jordan, Gregory S. Coleman, Robert W. Higgason, Houston, for relator.

George P. Hardy, III, David P. Willis, Dennis R. Mundy, Richard P. Hogan, Jr., David W. Holman, Houston, for respondent.

PHILLIPS, Chief Justice, delivered the opinion for the Court, in which GONZALEZ, HECHT, CORNYN, ENOCH, SPECTOR, OWEN and ABBOTT, Justices, joined.

In this original mandamus proceeding, we must first decide whether the trial court abused its discretion by compelling relator to designate in advance whether its crash testing was to be used for evidentiary purposes or solely for consulting purposes, and by ordering that the opposing party be allowed to attend those tests designated as evidentiary. Because we conclude that the trial court's order invades the consulting-expert

privilege, and that relator lacks an adequate remedy by appeal, we conditionally grant mandamus relief compelling the trial court to vacate its crash-test order. We must also determine whether the trial court abused its discretion by denying a continuance which would have rendered relator's jury fee timely. Because we conclude that the trial court also abused its discretion in this regard, we conditionally grant mandamus relief compelling the trial court to place this case on its jury docket.

I

Manuel Delarosa was severely injured in 1988 when his General Motors pickup truck collided with another car driven by Christopher Broussard. Delarosa's wife, a passenger in the pickup, suffered relatively minor injuries.

The Delarosas sued Broussard and General Motors in September 1990 alleging, among other things, that General Motors defectively designed the seat belts in Delarosa's pickup truck. In September 1995, after several continued trial settings, the trial court set the case for trial on January 3, 1996, on the court's "try or dismiss" docket. The notice sent to the parties did not specify whether the January 3 trial was to be to a jury or to the court.

When General Motors appeared on January 3, 1996, it discovered for the first time that no party had ever paid a jury fee, so that the case was on the nonjury docket. At the docket call, the court informed the parties that it intended to try the case without a jury beginning two days later. General Motors immediately paid the jury fee and then filed an "Objection to Placement of Case on Non–Jury Docket." Although General Motors had not paid the jury fee thirty days in advance of trial as required by Texas Rule of Civil Procedure 216(a), it argued that it had been led to believe that either the Delarosas or Broussard had paid a jury fee and that the case was on the jury docket. General Motors relied on the following circumstances: 1) the parties and the court had earlier discussed the logistics of trying the case to a jury; 2) Broussard, in his original answer, asked that all matters "be properly decided by this Honorable Court and Jury;" 3) the case had been preferentially set for July 12, 1993, which according to the trial court's schedule was a civil jury week; and 4) an October 1992 letter from the Delarosas' attorney to the trial court referred to the "issues to be presented to the Court and jury." Even the trial judge, in considering General Motors' arguments, stated that he "didn't realize this was a nonjury case until right before the nonjury docket."

General Motors also moved to continue the January 5 trial, arguing that the case was not ready because of pending discovery issues. At that time, both the Delarosas and General Motors had discovery matters pending before the court. In particular, General Motors argued that it had not conducted critical "crash tests" because the trial court had not yet ruled on the Delarosas' motion to attend those tests. Finally, General Motors argued that a continuance was necessary to allow its jury fee to become timely, thereby preserving its right to a jury trial. Despite their own outstanding document discovery requests, the Delarosas opposed the continuance, announcing that they were ready to proceed to trial before the court.

The trial court overruled General Motors' objection to nonjury trial and its motion for continuance at a January 5 pretrial conference. Recognizing that "this case still has some discovery that needs to be done ...," however, the trial court decided only to hear opening statements that day, then recess the trial for three weeks before hearing testimony. The court scheduled hearings during the interim period on both sides' outstanding discovery matters, recognizing that the crash tests would have to be performed at some future date after trial recommenced. Finally, the court informed the parties that they could expect a piecemeal trial, interlaced with the completion of discovery:

> I will tell all sides also that I don't intend necessarily to commit to try this case on a continuous day-by-day basis. I may recess it for two or three weeks, hear a couple of days of testimony, and come back in a week or so. It may be that certain experts, if I allow late designations, may need to be deposed. You will have this

trial finished before the spring is over and we will wrap this thing up one way or another as far as trial goes.

After hearing opening statements, the court recessed the trial in accordance with its announced plan.

The parties resolved their dispute over the Delarosas' document requests at a court hearing on January 9. After another discovery hearing the next day, the trial court granted the Delarosas' motion to attend General Motors' crash tests, subject to certain conditions. The court's order provided in pertinent part:

2. Plaintiffs are allowed to have representatives, *i.e.*, a videographer, a photographer, an attorney, and one expert, present at any crash test or sled test or any test involving vehicle-to-vehicle collisions by General Motors that may pertain to this case.

3. For any test governed by this order, notices shall be given one week in advance of the test by General Motors to the plaintiffs' attorneys.

4. Plaintiffs' representatives, *i.e.*, a videographer, a photographer, an attorney, and one expert, may attend the testing and must be afforded adequate and reasonable time prior to the test to inspect, measure, videotape, and photograph the test vehicle, dummies, cameras, instrumentation, test set-up, and other physical equipment associated with the test.

5. Plaintiffs' representatives, *i.e.*, a videographer, a photographer, an attorney, and one expert, may photograph, videotape, and film the test itself.

6. Neither plaintiffs, their attorneys, representatives, or experts may question any of General Motors' experts, witnesses, representatives, or attorneys who may be present at the crash testing.

7. Any testing performed by purely consulting experts, whose testimony will not be offered at trial or form any basis of any testimony at trial, and whose tests and opinions will not be communicated to or form the basis of establishing any testing parameters,

criteria, or conditions for any test, shall not be governed by the terms of this order and need not comply with this order. In other words, if General Motors decides to conduct sled tests, vehicle-to-vehicle tests, or crash tests purely, solely, and strictly for consultant purposes with consulting experts, then neither the plaintiffs, their attorneys, experts, or consultants shall be allowed to be present at this consultant-only testing.

8. If any crash tests or sled tests or any test involving vehicle-to-vehicle collisions are performed with consulting experts, or any discussions occur regarding such tests, no expert designated by General Motors—that is, no testifying expert—is allowed to be present. Nor may General Motors, its representative, attorneys, consultants, or any third-parties communicate, directly or indirectly, the results, format, or testing parameters to any testifying expert or any expert whose testimony will form the basis of any trial testimony.

9. The court and any opposing party must be notified at least three working days in advance of any sled, crash, or vehicle-to-vehicle testing conducted for consulting experts only. The notices shall advise the court and any opposing party that the testing is for consultant purposes only.

10. Any test to be conducted for consultant purposes only—including (1) the parameters and set-up for the testing, (2) the criteria for the testing, (3) any measurements for the testing, (4) the speed of the testing vehicles, or sled, and (5) any other preliminary matter relating to the parameters of the testing—must be filmed or videotaped. After the testing has been filmed or videotaped, the film or videotape must be filed with the court under seal. Then, if any later crash tests, sled tests, or vehicle-to-vehicle testing is conducted, and these tests are substantially similar to the consultant-only tests in any regard involving

speed, results, changes in velocity, or related matters, then the court reserves the right to disallow the use in evidence of the testing based upon the consultant-only test guidelines. The purpose of this paragraph is to prevent any party's conducting numerous tests with consulting-only experts until a favorable result is determined, and then to re-designate that testing as a sled, crash, or vehicle-to-vehicle test for designated testifying experts.

11. If the plaintiffs choose to conduct any crash test, sled test, or vehicle-to-vehicle test with dummies or anything else to simulate seat belt partings or any of the issues in this case, representatives of General Motors will be entitled to the same protections in this order, upon the filing of a proper motion.

This order effectively requires General Motors to determine *beforehand* whether a particular test is for evidentiary purposes or purely for consulting. Also, if General Motors runs a test for consulting purposes, it later cannot run a similar test for evidentiary purposes.

General Motors sought mandamus relief in the court of appeals on January 23, 1996, challenging the crash-test order and the trial court's denial of a jury trial. After initially staying the trial court proceedings, the court of appeals denied relief in June 1996, with one justice dissenting. 924 S.W.2d 222. Although concluding that the trial court's crash-test order "defeat[s] the fundamental policy reasons for exempting consulting experts from discovery," the court of appeals held that General Motors had an adequate remedy by appeal from the order. The court of appeals reasoned that if General Motors offered into evidence a crash test which plaintiffs had not been allowed to attend, and the trial court refused to admit the test for that reason, the trial court's evidentiary ruling could be reviewed by an appellate court via ordinary appeal. *Id.* at 231. The court of appeals did not resolve the jury trial issue, concluding that any abuse of discretion there could likewise be addressed by ordinary ap-

peal. *Id.* at 226–227. The dissenting justice agreed that the trial court's order infringed on the consulting-expert privilege, and further concluded that General Motors lacked an adequate remedy by appeal. 924 S.W.2d at 232 (Hudson, J., dissenting). Pursuing the appellate remedy, the dissenting justice reasoned, would require General Motors to privately conduct a crash test that it knew in advance was not purely for consulting purposes, thereby defying the trial court's order. *Id.* at 232.

Shortly after the court of appeals issued its opinion, the Delarosas moved in the trial court to withdraw or modify the crash-test order in light of the concerns voiced by the appellate court. While this motion was still pending, General Motors petitioned this Court for mandamus relief. The Delarosas responded that mandamus relief would be premature because the case was not in trial and because the trial court was reconsidering its crash-test ruling. Agreeing that the trial court should be allowed to reconsider its rulings in light of the court of appeals' opinion, we denied leave to file without prejudice. 940 S.W.2d 598.

The trial court subsequently overruled the Delarosas' motion to modify, stating in a letter to the parties that "I had no intentions of reconsidering my original rulings, and I do not intend to reconsider same now." Accordingly, General Motors refiled its mandamus action in this Court. We granted leave to file and heard oral argument. Meanwhile, the trial court has not heard any testimony in the nonjury trial, and General Motors has not conducted any crash tests, other than one which it conducted before the Delarosas filed their motion to attend the testing.

## II

### A

■ We first consider the trial court's crash-test order. General Motors argues that this order violates both the work-product privilege and the consulting-expert privilege. *See* Tex.R. Civ. P. 166b(3)(a), (b). Because we conclude that the order violates the consulting-expert privilege, we do not reach

the question of whether it also infringes on protected work product.

■ Rule 166b exempts from discovery the following:

> The identity, mental impressions and opinions of an expert who has been informally consulted or of an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial or any documents or tangible things containing such information if the expert will not be called as an expert witness, except that the identity, mental impressions and opinions of an expert who will not be called to testify as an expert and any documents or tangible things containing such impressions and opinions are discoverable if the consulting expert's opinion or impressions have been reviewed by a testifying expert.

TEX.R. CIV. P. 166b(3)(b). Like the work-product privilege, this consulting-expert privilege grants parties and their attorneys a sphere of protection and privacy in which to develop their case. Parties and counsel may consult with an expert to attempt to recreate an accident and test their litigation theories. If the expert's conclusions support the consulting party's case, that expert may be designated as a witness for trial. If, on the other hand, the expert's conclusions do not support the party's case, the identity of the expert and his or her conclusions need not be revealed to the other side. As we explained in *Tom L. Scott, Inc. v. McIlhany*, 798 S.W.2d 556, 559 (Tex.1990): "The policy behind the consulting expert privilege is to encourage parties to seek expert advice in evaluating their case and to prevent a party from receiving undue benefit from an adversary's efforts and diligence." And as the United States Supreme Court explained in recognizing the work-product privilege: "Proper preparation of a client's case demands that [the attorney] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests." *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947).

Without the consulting-expert privilege, parties would be reluctant to test an uncertain theory, for fear that it would provide evidence for the other side. As one commentator has explained:

> An attorney or party consults with an expert to try out new theories or to develop new facts, all with unpredictable results. Thus, the work produced by an expert is deserving of as much protection as the work of an attorney or other agent or representative of a party. If the results are favorable, the witness will most likely become a testifying expert, whose opinions, mental impressions, and knowledge are fully discoverable. If the results are unfavorable, however, the rules allow the party to keep the expert's identity and work confidential.

Albright, *The Texas Discovery Privileges: A Fool's Game?*, 70 TEX. L. REV. 781, 848 (1992). In *Werner v. Miller*, 579 S.W.2d 455, 456 (Tex.1979), we confirmed that the consulting-expert privilege is intended to allow "a consultant to investigate an accident without the risk of furnishing a potential expert witness or at least a theory of recovery or defense to the opposing party." *See also* Holman & Keeling, *Disclosure of Witnesses in Texas: The Evolution and Application of Rules 166b(6) and 215(5) of the Texas Rules of Civil Procedure*, 42 BAYLOR L. REV. 405, 425 n.148 (1990) ("As a practical matter, a purely consulting expert usually is an expert whose opinion is not very favorable to the party who consulted him.").

## B

The trial court's crash-test order undermines General Motors' consulting-expert privilege. While the order purports to exclude tests performed by purely consulting experts, it requires General Motors to decide *in advance* whether a particular crash-test is evidentiary or purely consulting. Thus, if General Motors designates a test as consulting and receives a favorable outcome, General Motors cannot offer the test at trial, negating the benefit of the test. Conversely, if

General Motors designates the test as evidentiary and receives an unfavorable outcome, General Motors' privilege will have been violated by plaintiffs' attendance. This approach is at odds with the rationale of the consulting-expert privilege, which is intended to allow parties to consult privately with an expert before deciding whether to designate that person as a witness.

Federal caselaw is consistent with this approach. In *Shoemaker v. General Motors Corp.*, 154 F.R.D. 235 (W.D.Mo.1994), the court denied the plaintiffs' motion to attend defendant's litigation testing. The court concluded that "the decision about what to test and how is the embodiment of the attorney's legal theories." *Id.* at 236. The court noted that, if the results of any tests are to be offered at trial, plaintiffs would have ample opportunity to depose persons knowledgeable about the tests offered. *Id. See also Hendrick v. Avis Rent A Car Sys.*, 916 F.Supp. 256 (W.D.N.Y.1996); *Donohoe v. American Isuzu Motors, Inc.*, 157 F.R.D. 238 (M.D.Pa. 1994).

The Delarosas rely on *Miller v. Rich*, 845 F.2d 190 (9th Cir.1988). In that case, the National Transportation Safety Board, as part of its investigation of the crash of a single-engine plane, planned to disassemble and inspect the plane's engine. The plane's owner sought an order authorizing him to observe this process, which the court granted. That case bears little similarity to the facts at issue here. The plane's owner and the NTSB were not opposing parties in litigation, and the NTSB asserted no claim of privilege. Indeed, the court noted that the NTSB offered no rationale for refusing to allow the aircraft's owner to observe the testing. *Id.* at 192. Moreover, the NTSB's internal policy explicitly authorized aircraft owners to attend such testing. *Id.*

### C

■ The Delarosas present several arguments in support of the crash-test order. First, they argue that it is unfair to allow General Motors to conduct multiple crash tests, varying the parameters until it achieves a result favorable to its theory of the case, and then shield the earlier unfavorable tests. Rule 166b, however, does not limit the number of tests that may be run by a consulting expert. Nor should any such limit be imposed. The consulting-expert privilege is intended to allow a party to develop its factual theories fully. A party may be required to run numerous tests under different parameters where the conditions surrounding the accident, such as speed of the vehicles, angle of impact, and position of the occupants, are not precisely known. Any tests that a party does offer at trial will be admissible only if the trial court determines that there is a substantial similarity between the test conditions and the accident conditions. *See* TEX.R. CIV. EVID. 901; *Fort Worth & Denver Ry. Co. v. Williams*, 375 S.W.2d 279, 281–82 (Tex.1964); *Sinko v. City of San Antonio*, 702 S.W.2d 201, 204 (Tex.App.— San Antonio 1985, writ ref'd n.r.e.); *Ford Motor Co. v. Nowak*, 638 S.W.2d 582, 590 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.); WENDORF, ET AL., TEXAS RULES OF EVIDENCE MANUAL IX–24 (1995). Thus, a party may not "rig" a test by unilaterally selecting parameters which are dissimilar from those surrounding the underlying accident.

■ The Delarosas next argue that because they do not have the resources to perform their own crash tests, they should have access to General Motors' tests. However, because the consulting expert privilege protects the very core of a party's thought processes and strategy regarding the litigation, there is no substantial hardship exception, such as that which exists for witness statements and party communications. *See* TEX.R. CIV. P. 166b(3). Again, effective cross-examination can expose any weaknesses in a test offered at trial, or even form a basis for excluding the test altogether.

■ Finally, the Delarosas rely on Rule 167(1)(b) to support their claim to attend General Motors' testing. This rule permits entry upon land in the possession or control of the opposing party "for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon within the scope of Rule 166b." TEX.R. CIV. P. 167(1)(b). The key phrase is "within

the scope of Rule 166b." The rule allowing entry upon land does not render discoverable items which are privileged under Rule 166b. For example, Rule 167(1)(b) obviously does not authorize a party to enter into opposing counsel's office to inspect privileged work product documents. Similarly, it does not authorize the Delarosas to enter into testing facilities under General Motors' control to view privileged tests.

For the foregoing reasons, we conclude that the trial court's crash-test order constitutes an abuse of discretion by infringing on General Motors' consulting-expert privilege.

### D

■ We next consider whether General Motors has an adequate remedy by appeal from the crash-test order. As noted, the court of appeals reasoned that if the trial court refused to admit a crash test because of General Motors' noncompliance with its order, then General Motors could obtain review of that evidentiary ruling by ordinary appeal. As the dissenting justice below explained, however, this approach is not acceptable.

The trial court's order specifically provides that plaintiffs are to be notified of and allowed to attend any crash test which General Motors may later offer into evidence. To obtain review under the court of appeals' analysis, General Motors would have to bar the Delarosas from its testing, apparently under the pretext that all such testing was purely for consulting purposes, and then proceed to offer one or more of the tests at trial. Such conduct would flaunt the trial court's order, possibly subjecting General Motors to contempt. Such dangerous and disruptive conduct should not be a prerequisite to meaningful review of the trial court's order. General Motors lacks an adequate remedy by appeal.

### III

■ We next consider whether the trial court abused its discretion in denying General Motors' request for a jury trial. Rule 216 provides:

No jury trial shall be had in any civil suit, unless a written request for a jury trial is filed with the clerk of the court a reasonable time before the date set for trial of the cause on the non-jury docket, but not less than thirty days in advance.

TEX.R. CIV. P. 216(a). General Motors filed a written request for a jury trial and tendered the $30.00 fee on January 3, 1996, the date the case was set for trial. General Motors also moved to continue the trial to allow its jury request to become timely. As noted, the trial court denied the motion for continuance, calling the case for nonjury trial on January 5.

■ "The granting or denial of a motion for continuance is within the trial court's sound discretion." *Villegas v. Carter,* 711 S.W.2d 624, 626 (Tex.1986). General Motors argues that the trial court abused its discretion by not granting a continuance for at least thirty days, which would have rendered General Motors' jury request and payment timely. *See Halsell v. Dehoyos,* 810 S.W.2d 371, 371 (Tex.1991) (where case is continued, new trial date determines whether payment of jury fee is timely). Under the unique facts of this case, we agree.

The right to jury trial is one of our most precious rights, holding "a sacred place in English and American history." *White v. White,* 108 Tex. 570, 196 S.W. 508, 512 (1917). Even where a party does not timely pay the jury fee, courts have held that a trial court should accord the right to jury trial if it can be done without interfering with the court's docket, delaying the trial, or injuring the opposing party. *See Dawson v. Jarvis,* 627 S.W.2d 444, 446–47 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *Childs v. Reunion Bank,* 587 S.W.2d 466, 471 (Tex.Civ. App.—Dallas 1979, writ ref'd n.r.e.); *Aronoff v. Texas Turnpike Auth.,* 299 S.W.2d 342, 344 (Tex.Civ.App.—Dallas 1957, no writ); *Erback v. Donald,* 170 S.W.2d 289, 294 (Tex. Civ.App.—Fort Worth 1943, writ ref'd w.o.m.). *See also Allen v. Plummer,* 71 Tex. 546, 9 S.W. 672, 673 (1888) ("[T]he failure to make [a timely jury fee payment] does not forfeit the right to have a trial by jury when such failure does not operate to the prejudice of the opposite party.").

Even as the trial court was denying General Motors' motion for continuance, it conceded that the case was not ready for trial. Because of the outstanding discovery issues, including resolution of plaintiffs' motion to attend the crash tests, the trial court decided to hear no evidence until January 29, twenty-six days after General Motors paid its jury fee. Even then, the court acknowledged that outstanding discovery issues would probably cause further multiple interruptions to the proceedings. At a discovery hearing on January 10, the court again confirmed that trial would be delayed by ongoing discovery:

> I'm going to start this case on the 29th. I'm probably going to hear from two or three or four witnesses, primarily your lay witnesses. I may even hear from your experts. I don't know, but at some point I'm going to shut this thing down for a while to let you guys finish whatever the discovery is that's still outstanding. That may be the crash tests. I don't have a problem with that.

We recognize that occasionally the exigencies of a crowded docket will require a judge to interrupt a bench trial, or even conduct it in segments. But here the trial judge commenced the nonjury trial in the teeth of a demand for a jury trial, timing the proceedings to avoid the requirements of Rule 216(a), with no expectation of reaching the heart of the case for some weeks or months. In light of such preordained delays, General Motors established that a thirty-day continuance to perfect General Motors' jury trial demand would not cause the Delarosas any injury or delay. In fact, the trial court's seriatim trial schedule seems only a sham to hold General Motors to its mistake in not paying the jury fee without penalizing the other side. Under these particular and unusual circumstances, we hold that the trial court abused its discretion by not granting a continuance to allow General Motors' jury request and fee to become timely.

■■■ Because the denial of a jury trial can be reviewed by ordinary appeal, *see Halsell v. Dehoyos*, 810 S.W.2d 371 (Tex.1991); *Allen v. Plummer*, 71 Tex. 546, 9 S.W. 672 (1888); *Dawson v. Jarvis*, 627 S.W.2d 444 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *Aronoff v. Texas Turnpike Authority*, 299 S.W.2d 342 (Tex.Civ.App.—Dallas 1957, no writ), mandamus is generally not available to review such a ruling.[1] Similarly, the denial of a motion for continuance is an incidental trial ruling ordinarily not reviewable by mandamus. In the absence of any other error, we would not grant extraordinary relief merely to revise a trial judge's scheduling order, however perverse. This case, however, presents special circumstances, in that we must remedy the crash-test order by interlocutory mandamus review. Under these special circumstances, the interests of judicial economy dictate that we should also remedy the trial court's denial of the right of jury trial by mandamus.

\* \* \*

For the foregoing reasons, we conditionally grant writ of mandamus compelling the trial court to vacate its January 22, 1996, crash-test order. We further direct the trial court to abort or mistry the nonjury trial commenced in January 1996, and to place the case on its jury docket in accordance with General Motors' written request and payment of jury fee, which are now timely. We are confident that Judge Gayle will act in accordance with this opinion, and the writ of mandamus will issue only if he fails to do so.

BAKER, J., did not participate in the decision.

---

1. Since we reaffirmed in *Walker v. Packer*, 827 S.W.2d 833, 842 (Tex.1992), that mandamus is unavailable where there is an adequate remedy by appeal, at least three courts of appeals have reviewed jury trial orders by mandamus. *See Granger v. Folk*, 931 S.W.2d 390, 394 (Tex.App.—Beaumont 1996, orig. proceeding); *Union Pac.* *Fuels, Inc. v. Johnson*, 909 S.W.2d 130, 133 (Tex.App.—Houston [14th Dist.] 1995, orig. proceeding); *Rosenthal v. Ottis*, 865 S.W.2d 525, 529 (Tex.App.—Corpus Christi 1993, orig. proceeding). We express no opinion on the correctness of these decisions.