# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00374-CV

**In re Insurance Placement Services (Bermuda) Ltd., Marsha Lanier Rambo and Bradley C. Bohling**

### ORIGINAL PROCEEDING FROM TRAVIS COUNTY

## M E M O R A N D U M   O P I N I O N

Relators Insurance Placement Services (Bermuda) Ltd., Marsha Lanier Rambo, and Bradley C. Bohling (collectively, "IPS") have filed a petition for writ of mandamus to compel the district court to vacate its June 2, 2011 order that required third-party witnesses L & L Investment Company, LLC ("L & L") and Sidney Lanier to respond to document subpoenas served on them by real parties in interest Giordani, Schurig, Beckett & Tackett, LLP; Leslie C. Giordani; Michael H. Ripp, Jr.; Robert W. Chesner, Jr.; Elizabeth M. Schurig; and Carolyn M. Beckett (collectively, "GSBT"). We will deny the petition.

### BACKGROUND

GSBT, an Austin law firm, specialized in advising high-net-worth individuals in estate and tax-planning matters. Attorneys at GSBT advised certain clients regarding offshore private placement life insurance (PPLI), a specialized type of insurance transaction. IPS is an offshore brokerage company that brokered the sale of PPLI policies to some of GSBT's clients in exchange for the payment of underwriting and placement fees and trail commissions. GSBT acted

as legal counsel for IPS. Several of GSBT's partners also owned Edgewater Consulting Group, Ltd., a separate company that offered consulting services and performed post-issuance policy servicing for PPLI policies. IPS and Edgewater entered into a Consulting and Policy Servicing Agreement (CPSA) pursuant to which Edgewater performed policy servicing on PPLI policies that IPS brokered.

In 2008 one of GSBT's and IPS's biggest clients, referred to in the pleadings as "Client X," severed its relationship with GSBT and IPS and threatened to sue GSBT, IPS, and Edgewater unless IPS agreed to waive its right to receive trail commissions on policies it had placed for Client X and his family. While disputing the validity of Client X's claims of wrongdoing, the parties ultimately settled with Client X in December 2008. Shortly thereafter, IPS filed suit against GSBT alleging causes of action for professional negligence, breach of contract, breach of fiduciary duty, fraud, and negligent misrepresentation in connection with two major transactions—(1) the negotiation and agreement to the terms of the CPSA, and (2) the settlement between IPS and Client X.

GSBT sought discovery through written questions to third-party witness Sidney Lanier and his company, L & L. Lanier is Marsha Rambo's brother and, according to IPS, "is a successful businessman and has a 'reputation among some for being litigious.'" Lanier, who is not a lawyer, participated in the negotiations and drafting of the CPSA and other agreements between GSBT and IPS. Lanier was also involved in discussions between IPS and the attorneys representing IPS in matters relating to Client X's threatened claims. IPS involved Lanier in its discussions and allowed him to communicate directly with their attorneys regarding the terms of the settlement with Client X. GSBT served Lanier and L & L with discovery requesting that Lanier and L & L produce

documents constituting communications between them and Marsha Rambo, attorneys for IPS, or any other agent or representative of IPS concerning IPS. IPS objected to this request by asserting the consulting-expert privilege for any such communications relating to the time period after December 31, 2008 and "as to Lanier's knowledge and information learned through consultation with [IPS] and their counsel after December 31, 2008."[1] While acknowledging that facts learned by Lanier on or before December 31, 2008 were fully discoverable, IPS took the position that after that date Lanier was a consulting expert for IPS, and that a request for production of documents and communications after that date would "invade the consulting expert privilege." GSBT countered that Lanier's role as advisor to his sister never changed and that IPS's assertion of the consulting-expert privilege was an improper attempt to avoid producing otherwise discoverable communications between IPS and a third-party fact witness. GSBT contends that Lanier is a fact witness subject to discovery and that his involvement after December 31, 2008 was not because he was retained as a consulting expert, but because Rambo discussed IPS's business with her brother from time to time and involved him in the transactions in dispute in this litigation

After conducting a hearing and considering evidence filed by IPS and GSBT, the trial court overruled IPS's claim of privilege and ordered L & L and Lanier to produce the material and information requested, both before and after December 31, 2008. IPS then filed this mandamus petition.

---

[1] Although IPS initially asserted the "attorney-client privilege and/or work product doctrine and/or investigative privilege and/or consulting expert privilege," it later narrowed the asserted privilege to the consulting-expert privilege only.

**DISCUSSION**

In discovery matters, mandamus is available to correct a clear abuse of discretion when there is no adequate remedy by appeal. *See In re Prudential Ins. Co.*, 148 S.W.3d 124, 135 (Tex. 2004); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law. *Walker*, 827 S.W.2d at 839. With respect to resolution of factual issues or matters committed to the trial court's discretion, the reviewing court may not substitute its judgment for that of the trial court. *See id.* at 840 (citing *Flores v. Fourth Court of Appeals*, 777 S.W.2d 38, 41-42 (Tex. 1989) (determination of discoverability under Texas Rule of Civil Procedure 166b(3)(d) was within trial court's discretion)). The relator must establish that the trial court could reasonably have reached only one decision. *Walker*, 827 S.W.2d at 840. Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 918 (Tex. 1985); *In re Doe*, 22 S.W.3d 601, 604 (Tex. App.—Austin 2000, orig. proceeding). Review of a trial court's determination of the legal principles controlling its ruling is much less deferential. *Walker*, 827 S.W.2d at 840. A trial court has no discretion in determining what the law is or applying the law to the facts. *Id.* A clear failure by the trial court to analyze or apply the law correctly constitutes an abuse of discretion. *Id.*

The identity, mental impressions, and opinions of a consulting expert whose mental impressions and opinions have not been reviewed by a testifying expert are not discoverable. Tex. R. Civ. P. 192.3(e). IPS contends that, as of December 31, 2008, Lanier was IPS's consulting expert

4

and, consequently, the trial court's order invades its consulting-expert privilege. While the scope of discovery is largely within the trial court's discretion, *see In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998), mandamus is available when the trial court improperly orders the disclosure of information protected by the consulting-expert privilege. *See General Motors Corp. v. Gayle*, 951 S.W.2d 469, 476 (Tex. 1999). Appeal is an inadequate remedy for such disclosure. *Id.*

The party asserting a privilege has the burden to prove its application. *See Jordan v. Fourth Court of Appeals*, 701 S.W.2d 644, 648-49 (Tex. 1985). To make a prima facie showing of privilege, the party asserting the privilege must: (1) specifically plead the privilege; (2) produce evidence to support it either by affidavit or testimony; and, if necessary, (3) submit the allegedly privileged items for an *in camera* inspection. *Peeples v. Fourth Court of Appeals*, 701 S.W.2d 635, 637 (Tex. 1985) ("We hold that a party who seeks to exclude documents, records or other matters from the discovery process has the affirmative duty to specifically plead the particular privilege or immunity claimed.").

A "consulting expert" is "an expert who has been consulted, retained, or specially employed by a party in anticipation of litigation or in preparation for trial but who is not a testifying expert." Tex. R. Civ. P. 192.7(d). IPS contends that Lanier "participated in conversations and emails solely related to Plaintiffs' litigation strategies, attorney work product, and other information that was provided to the attorneys who were working with [IPS]," that IPS "discussed litigation strategy with Lanier," and that Lanier "participated in certain communications with [IPS]'s counsel." IPS identified the following as evidentiary support for its contention that, as of December 31, 2008, Lanier was a consulting expert:

• The affidavit of Marsha Rambo containing the following averments:

> Sid Lanier's communications with [IPS] and their counsel after December 31, 2008, were in his role as a consulting expert for [IPS] and should not be discoverable by [GSBT].
>
> After December 31, 2008, Sid Lanier participated in conversations and emails solely related to [IPS]'s litigation strategies, attorney work product, and other information that was provided to the attorneys who were working with [IPS] in anticipation of litigation.
>
> [IPS] involved Sid Lanier in these discussions based on our understanding, as discussed with lawyers at Jackson Walker, that Sid Lanier was a consulting expert and his communications with us after December 31, 2008, were exempt from discovery. We also shared this understanding with the lawyers at Loewinsohn Flegle Deary, LLP. In reliance on this determination, [IPS] discussed litigation strategy with Sid Lanier. Further, he participated in certain communications with [IPS]'s counsel, including Jackson Walker and Loewinsohn Flegle Deary, LLP. It is my understanding that Sid Lanier agreed to the confidentiality of all communications with him regarding this action, including those after December 31, 2008. To my knowledge, Sid Lanier has maintained this confidentiality.
>
> Sid Lanier is an experienced businessman. He also has experience in litigation. I felt it was important to obtain his advice in developing strategies and substantive matters in this case.

• Deposition testimony of one of IPS's attorneys who stated that he was not aware of "any contract that was executed or any formal retainer agreement that was entered," but that Lanier "was brought in and provided, I believe, business advice to IPS and trying to figure out what the lay of the land might be in the future and damages law that are sustained and so forth."

GSBT submitted its own evidence to contradict IPS's claim that Lanier was consulted in an expert capacity and to demonstrate that Lanier's role was not that of a true consulting expert. This included evidence that Lanier's primary relationship to IPS was that he is Marsha Rambo's brother, that Lanier is not an attorney and is therefore unlikely to be familiar with "damages law," and that Lanier was never retained as an expert by IPS or its lawyers. Moreover, it is undisputed that Lanier's

involvement with IPS predated the onset of the dispute between IPS and GSBT. He was involved in negotiating both the CPSA and the settlement agreement and regularly consulted with and advised his sister regarding IPS's business. There was no evidence presented to the trial court indicating that either Lanier or L & L was compensated for any consulting expert services. In short, GSBT and IPS presented conflicting evidence regarding whether, after December 31, 2008, Lanier was a true consulting expert—an "expert" who was "consulted, retained, or specially employed by a party in anticipation of litigation or in preparation for trial," *see* Tex. R. Civ. P. 192.7(d)—or simply continued his involvement as sounding board and advisor to his sister and to IPS regarding the business relationship with GSBT. By ordering L & L and Lanier to respond to the document subpoenas, the trial court made an implied finding that Lanier was not acting in the role of a consulting expert.

Presented with this evidence, the trial court could reasonably have found that Lanier was not a consulting expert within the meaning of Texas Rule of Civil Procedure 192.7(d). Rambo's affidavit principally contains conclusory statements regarding Lanier's status as a consulting expert and her own understanding and assumption that her communications with Lanier were privileged. That Lanier may have agreed to keep information she shared with him confidential does nothing to establish that he met the rule 192.7(d) definition of a consulting expert, nor does it matter that Rambo "thought it important to obtain his advice in developing strategies and substantive matters in this case." Nor does the attorney's statement that Lanier provided IPS "business advice" and offered insight into "what the lay of the land might be in the future" constitute conclusive evidence that Lanier was, in fact, acting in the capacity of a consulting expert. *See Tom L. Scott, Inc.*

7

*v. McIlhany*, 798 S.W.2d 556, 559 (Tex. 1990) (explaining that policy behind consulting-expert privilege is to encourage parties to seek expert advice in evaluating their case).

IPS has not established that the trial court could reasonably have reached only one decision—that Lanier was a consulting expert for IPS after December 31, 2008. The trial court's decision was not, therefore, arbitrary and unreasonable, and we may not substitute our judgment for that of the trial court concerning resolution of this fact issue. *See In re Bell Helicopter Textron, Inc.*, 87 S.W.3d 139, 145 (Tex. App.—Fort Worth 2002, orig. proceeding). We hold that IPS has not demonstrated that the trial court's order requiring L & L and Lanier to produce the requested documents was a clear abuse of discretion subject to correction by writ of mandamus.

**CONCLUSION**

Based on the totality of the circumstances, we conclude that the trial court did not clearly abuse its discretion in determining that Lanier was not a consulting expert and in ordering L & L and Lanier to respond to the document subpoenas. The petition for writ of mandamus is denied. *See* Tex. R. App. P. 52.8(a). The stay order issued by this Court on June 10, 2011 is lifted.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Filed:   July 14, 2011