# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-22-00574-CV

---

**James Allen Brickley, Jr., Appellant**

**v.**

**Marie Laurence Gloria Joseph-Stephen, Appellee**

---

### FROM THE 426TH DISTRICT COURT OF BELL COUNTY
### NO. 22DFAM331978, THE HONORABLE STEVEN J. DUSKIE, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

James Allen Brickley Jr. (Father) appeals the order terminating his parental rights to his child (Child) with Marie Laurence Gloria Joseph-Stephen (Mother). The trial court found by clear and convincing evidence that (1) Father had triggered the predicate-ground requirements for termination under Family Code section 161.001(b)(1)(Q) and (2) that terminating Father's parental rights was in Child's best interest. *See* Tex. Fam. Code § 161.001(b)(1)(Q), (2). In three appellate issues, Father contests the sufficiency of the evidence, the court's denial of a continuance, and its denial of a jury trial. We affirm.

### BACKGROUND

Child was nine years old by the time of the August 31, 2022 bench trial. Father stipulated that in 2019, he was convicted for aggravated sexual assault and sentenced to 35 years

in prison. Father agreed when asked to confirm that he would have to serve at least half of that sentence before becoming eligible for parole.[1]

Child lives with Mother and her husband, who have been providing for all of Child's needs while Father has been incarcerated. Child calls Mother's husband "Papi," the husband has acted like a father to Child, and Mother wants the husband to adopt Child.

Because of his imprisonment, all that Father can do to participate in parenting Child is to talk to Child by phone, which he did about weekly, or mail letters and try to take part in parenting decisions. Child last saw Father in 2019 and cannot visit him in prison. In fact, Father forbade anyone from telling Child where Father is, a demand that Mother has complied with. Otherwise, Father applied for and receives veteran's benefits that witnesses called "apportionment checks," and portions of those funds have been sent directly to Mother. Beyond these benefits though, Father had been behind on his child support and had not sent Mother any financial support in the year-plus before trial.

In May 2022, Mother brought this suit to terminate Father's parental rights to Child. The case proceeded to the bench trial, during which Mother, Father, and Father's mother testified and after which the court found by clear and convincing evidence that Father's parental rights should be terminated under Family Code section 161.001(b)(1)(Q) and the statutory best-interest requirement. Father now appeals.

---

[1] Father noted, however, that he has a still-pending application for a writ of habeas corpus.

**DISCUSSION**

**I.      The evidence was sufficient under Subsection (Q) and the best-interest requirement.**

In his first issue, Father maintains that "[t]he evidence was insufficient to terminate [his] parental relationship."

To terminate parental rights, the petitioner must prove both (1) one of the statutory predicate grounds and (2) that termination is in the best interest of the child. *See* Tex. Fam. Code § 161.001(b)(1), (2); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). The petitioner must prove both elements by clear and convincing evidence. *See* Tex. Fam. Code § 161.206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007; *accord In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002).

Legal-sufficiency review of the evidence to support termination requires reviewing all the evidence in the light most favorable to the finding under attack and considering undisputed contrary evidence to decide whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *See In re A.C.*, 560 S.W.3d 624, 630–31 (Tex. 2018). "Factual sufficiency, in comparison, requires weighing disputed evidence contrary to the finding against all the evidence favoring the finding." *Id.* at 631. "Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id.*

When reviewing the evidence, we must "provide due deference to the decisions of the factfinder, who, having full opportunity to observe witness testimony first-hand, is the sole

arbiter when assessing the credibility and demeanor of witnesses." *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014). The factfinder is entitled to disbelieve any witness's testimony. *S.C. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-20-00039-CV, 2020 WL 3892796, at \*15 (Tex. App.—Austin July 10, 2020, no pet.) (mem. op.). And it is the factfinder's role to draw any reasonable inferences from the evidence that it chooses and to choose between conflicting reasonable inferences. *See In re J.W.*, 645 S.W.3d 726, 745 (Tex. 2022); *B.D. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-20-00118-CV, 2020 WL 5100641, at \*17 (Tex. App.—Austin Aug. 28, 2020, pet. denied) (mem. op.).

Father's parental rights were terminated under the Subsection (Q) statutory predicate ground. It provides that a parent's rights may be terminated if the parent has "knowingly engaged in criminal conduct that has resulted in the parent's: (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition." Tex. Fam. Code § 161.001(b)(1)(Q). Father in his appellant's brief expressly restricts his evidence-sufficiency challenge to (1) whether he will be unable to care for Child for at least two years and (2) the statutory best-interest requirement.[2]

Inability to care is subject to a burden-shifting framework. "Once the [petitioner] has established the first prong of subsection Q, the parent must produce some evidence as to how he or she would provide or arrange to provide care for the child during the period of incarceration." *Schexnider v. Texas Dep't of Fam. & Protective Servs.*, No. 03-03-00298-CV, 2005 WL 770562, at \*3 (Tex. App.—Austin Apr. 7, 2005, no pet.) (mem. op.) (citing *In re Caballero*, 53 S.W.3d

---

[2] Father does not contest that he will stay in prison for at least two years or that he knowingly engaged in the criminal conduct that led to his imprisonment. Father stipulated to his conviction for aggravated sexual assault and his 35-year sentence. The offense of aggravated sexual assault requires no less than a knowing mental state. *See* Tex. Penal Code § 22.021(a)(1)(A), (B).

391, 396 (Tex. App.—Amarillo 2001, pet. denied)); *accord Zieger v. Texas Dep't of Fam. & Protective Servs.*, No. 03-03-00690-CV, 2005 WL 2043812, at *4 (Tex. App.—Austin Aug. 25, 2005, pet. denied) (mem. op.) (same); *C.B. v. D.S.*, No. 03-07-00718-CV, 2009 WL 1423968, at *2 (Tex. App.—Austin May 22, 2009, no pet.) (mem. op.) (citing *Caballero*, 53 S.W.3d at 396, 398 (ops. on orig. submission & on reh'g)). "When that burden of production is met, the [petitioner] then has the burden of persuasion that the arrangement would fail to satisfy the parent's duty to the child." *Schexnider*, 2005 WL 770562, at *3 (citing *Caballero*, 53 S.W.3d at 396); *accord Zieger*, 2005 WL 2043812, at *4 (same).

Subsection (Q) allows a petitioner "to act in *anticipation* of a parent's abandonment of the child and not just in response to it." *See In re C.L.E.E.G.*, 639 S.W.3d 696, 698–99 (Tex. 2022) (per curiam) (internal quotation omitted) (quoting with added emphasis *A.V.*, 113 S.W.3d at 360). It thus allows for termination even "without specific evidence of long-term abandonment." *See In re J.F.-G.*, 627 S.W.3d 304, 314 (Tex. 2021). "[F]actors to be considered" under Subsection (Q) "include 'the availability of financial and emotional support from the incarcerated parent.'" *C.B.*, 2009 WL 1423968, at *2. Evidence supporting a Subsection (Q) finding against a parent includes evidence showing that the parent has not made efforts to arrange for the child's care, has no family members with whom the parent would want the child placed, has not provided the names of any potential placements for the child, and has not provided financial support or health insurance for the child. *See C.L.E.E.G.*, 639 S.W.3d at 700; *V.A.C. v. J.L.W.*, No. 03-18-00202-CV, 2018 WL 4100798, at *3 (Tex. App.—Austin Aug. 28, 2018, pet. denied) (mem. op.); *Lewis v. Texas Dep't of Fam. & Protective Servs.*, No. 03-07-00510-CV, 2008 WL 3877687, at *5 (Tex. App.—Austin Aug. 20, 2008, no pet.) (mem. op.).

Here, Mother's care for Child cannot be considered as evidence in Father's favor about ability to care. "The fact that a surrogate cares for the child in the parent's absence is not evidence that the parent can provide the necessary care unless the caregiver is supplying the care *on behalf of*—not just in place of—the incarcerated parent." *E.L.M. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-12-00779-CV, 2013 WL 2157242, at *2 (Tex. App.—Austin May 14, 2013, no pet.) (mem. op.) (citing *In re H.R.M.*, 209 S.W.3d 105, 110 (Tex. 2006) (per curiam)). Further,

> Absent evidence that the non-incarcerated parent agreed to care for the child on behalf of the incarcerated parent, merely leaving a child with a non-incarcerated parent does not constitute the ability to provide care. If it did, then termination under subsection Q could not occur in any instance where one parent is not incarcerated and is willing and able to care for the child.

*H.R.M.*, 209 S.W.3d at 110. Thus, as in *H.R.M.*, "[s]howing that [Mother] cared for [Child] and maintained contact with [Father] . . . does not show that she agreed to care for [Child] *on his behalf*, particularly where, as here, she is seeking to terminate his rights." *See id.*

Under *H.R.M.* and the inability-to-care burden-shifting framework, and given Father's stipulation to his incarceration and 35-year sentence, Father needed to produce some evidence of his ability to arrange for care for Child outside of Mother's care. *See id.*; *C.B.*, 2009 WL 1423968, at *2; *Zieger*, 2005 WL 2043812, at *4; *Schexnider*, 2005 WL 770562, at *3. But his evidence and his arguments on appeal amount to showing that some veteran's benefits were provided to Mother on his behalf. However, evidence of Mother's care cannot be credited to Father, as we have said, and nothing in the evidence explained whether the amount of the veteran's benefits was enough to meet Child's needs. By contrast, Mother's testimony established that she and her husband alone were caring for all of Child's needs, physical and emotional, no matter the amounts of the veteran's benefits. The trial court had the discretion simply to believe

6

Mother's testimony and disbelieve Father's in all relevant respects. *See J.W.*, 645 S.W.3d at 745; *B.D.*, 2020 WL 5100641, at *17. Under the applicable legal- and factual-sufficiency standards, we conclude that the evidence was sufficient to support the trial court's finding against Father under Subsection (Q).

As for the best-interest requirement, best-interest analysis "is child-centered and focuses on the child's well-being, safety, and development." *A.C.*, 560 S.W.3d at 631. There is a strong presumption that a child's best interest is served by maintaining the parent–child relationship. *D.J. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-20-00323-CV, 2020 WL 7395924, at *5 (Tex. App.—Austin Dec. 17, 2020, pet. denied) (mem. op.).

Our evidence-sufficiency review is guided by several non-exclusive factors taken from *Holley v. Adams*: (1) the child's wishes, (2) the child's present and future emotional and physical needs, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals in promoting the child's best interest, (6) the plans for the child by those individuals and by the agency seeking custody, (7) the stability of the home or the agency's proposed placement, (8) the parent's acts and omissions that may indicate that the existing parent–child relationship is improper, and (9) any excuse for the parent's acts and omissions. *See* 544 S.W.2d 367, 371–72 (Tex. 1976). The petitioner need not prove all these factors, and the lack of evidence under some factors does not preclude a finding that termination is in the child's best interest. *See C.H.*, 89 S.W.3d at 27. "The need for permanence is the paramount consideration when determining a child's present and future physical and emotional needs." *M.R. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-17-00715-CV, 2018 WL 1023899, at *3 (Tex. App.—Austin

Feb. 23, 2018, no pet.) (mem. op.). Evidence probative under the statutory predicate grounds may be probative of best interest as well. *A.C.*, 560 S.W.3d at 631–32.

There was no evidence presented under the first factor, so it is neutral. But under all the rest, Mother presented evidence that she and her husband are fully caring for Child without needing any help from Father and that Father's involvement in Child's life actually has been counterproductive to Child's needs. Mother testified that Father has demanded that no one tell Child where Father is and that that has caused Child emotional harm. On the occasions that Father does call Child from prison, Child comes away from the calls expressing emotional concern because of not knowing where Father is and why he is gone. Father, Mother testified, has also used his status as Child's parent to interfere with parental decision-making, including by refusing to sign documents needed for Child to travel. Even before his incarceration, Father was behind on child support. And he parented in a way that caused Child trouble: Mother related a story that after Father had taught Child some fighting moves, Child used what he learned on a teacher, causing the teacher serious enough injury to need a cast.

Father's only argument in his brief on best interest is that Mother's testimony was speculative, but we disagree. Mother testified about the basis for her beliefs about Child and about Father's parenting, including that she had been the one raising Child for much of his life. Also, Mother would know about Father's parenting given that, as Father's mother testified, Father and Mother used to be married. Under the applicable legal- and factual-sufficiency standards, we conclude that most of the *Holley* factors point in favor of termination and that the evidence was sufficient to support the trial court's finding against Father under the best-interest requirement. We overrule Father's first issue.

## II. Father's motion for continuance lacked a supporting affidavit and so did not preserve error.

In his second issue, Father maintains that the trial court "erred by denying a continuance to conduct discovery."

To preserve error, a motion for a continuance must be in writing and accompanied by an affidavit. *M.F. v. State*, No. 03-15-00666-CV, 2016 WL 3678432, at *2 (Tex. App.—Austin July 7, 2016, pet. denied) (mem. op.); *see* Tex. R. Civ. P. 251. There is only one written motion for continuance in the record, but it lacks a supporting affidavit. "[W]hen movants fail to comply with Tex. R. Civ. P. 251's requirement that the motion for continuance be 'supported by affidavit,' [the appellate court will] presume that the trial court did not abuse its discretion in denying the motion." *M.F.*, 2016 WL 3678432, at *2 (internal quotation omitted) (quoting *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986)). We overrule Father's second issue.

## III. The trial court did not abuse its discretion by proceeding to a bench trial.

In his third issue, Father maintains that he "was improperly denied trial by jury."

The denial of a jury demand is reviewed for an abuse of discretion. *Mercedes–Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996). A trial court abuses its discretion when its decision is arbitrary, unreasonable, and without reference to guiding principles. *S.B. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-20-00373-CV, 2020 WL 7414728, at *1 (Tex. App.—Austin Dec. 18, 2020, no pet.) (mem. op.).

A demand for a jury trial should be made at least 30 days before trial, Tex. R. Civ. P. 216(a), "[b]ut filing an untimely jury demand does not necessarily mean that a party loses her right to a jury trial," *E.E. v. Texas Dep't of Fam. & Protective Servs.*, 598 S.W.3d 389, 396 (Tex. App.—Austin 2020, no pet.). Even if the demand is untimely, "a trial court should accord the right to jury trial if it can be done without interfering with the court's docket, delaying the trial, or

9

injuring the opposing party." *Id.* (internal quotation omitted) (quoting *General Motors Corp. v. Gayle*, 951 S.W.2d 469, 476 (Tex. 1997)).

The record bears out that the trial court was within its discretion to deny Father's jury demand because even when asked by the court what motions or requests Father wanted heard before trial, Father neglected to mention his jury demand and his explanations in support of his other requests, and Mother's counsel's response, allowed the court to reasonably infer that waiting for a jury trial would cause unnecessary delay. As background for all of Father's motions and requests, Mother filed this suit in May 2022; a process-server's return shows that the process-server delivered the citation, original petition, and local standing orders to Father's prison's law librarian on June 1, 2022; and testimony by Father shows that he received the papers from the law librarian the same day. Father at first did not answer the suit but later that June moved to dismiss the suit for lack of jurisdiction, arguing lack of proper service. After Father notified the court of his new mailing address, Father in July 2022 received at the new address notice of the trial date. When the trial date was about a week away, Father filed his original answer and jury demand.

On the day of trial but before it began, the court asked Father for any motions or requests he wanted to present for hearing. Father raised only his motion for continuance and argued in support of it:

> [T]he motion for continuance was basically so we can start the process of discovery basically since I've been, like I said, going into a proceeding because, I mean, where I felt I wasn't served in accordance with law, I went ahead and acted accordingly and I filed a motion to dismiss because of that. But since I filed that motion, [Mother] has withheld my son from me. I haven't been able to talk to him over the phone as usual and, I mean, that's basically it.

Mother's counsel responded that because the suit had been on file since May, with proof that service of process was effected on June 1, there had been the chance for Father to make discovery

10

requests. She added that Mother's evidence would consist entirely of testimony, leaving "no exhibits to produce to" Father via discovery, and that she "d[id]n't believe [Father]'ll be able to produce documents to me because he's in prison." Although the court reserved its ruling on the motion for a continuance until after all trial witnesses testified, Father never asserted his jury demand but did reassert his motions for a continuance and to dismiss for lack of jurisdiction.

The record thus shows that Father pursued other of his pre-trial requests but not his jury demand. And the record allowed the trial court to reasonably infer that even Father's other requests lacked merit—Father never began discovery even though he had time to do so, and he answered the suit and thereby extinguished his own motion based on lack of proper service. *See, e.g.*, *Whitmire v. Greenridge Place Apartments*, No. 01-06-00963-CV, 2007 WL 2894167, at *3 (Tex. App.—Houston [1st Dist.] Oct. 4, 2007, pet. dism'd) (mem. op.) (answer waives defects in service of process); *$6453.00 v. State*, 63 S.W.3d 533, 535–36 (Tex. App.—Waco 2001, no pet.) (same). We thus conclude that the trial court did not abuse its discretion by proceeding to a bench trial and overrule Father's third issue.

## CONCLUSION

We affirm the order terminating Father's parental rights to Child.

_____

Chari L. Kelly, Justice

Before Justices Kelly, Smith, and Theofanis

Affirmed

Filed: March 2, 2023

11